JAMES R. O'BEIRNE, on Behalf of Himself and all Other Bond-holders of THE ALLEGHENY AND KINZUA RAILROAD COMPANY, Appellant, *v.* SPENCER S. BULLIS and Others, Respondents.

*Specific performance — when impossible, damages may be awarded in lieu thereof — legal relief granted in an equity action.*

Where the specific performance of a contract to mortgage real estate cannot be had because the person contracting to mortgage the same is not the owner thereof, specific performance of such contract will not be decreed in an action brought for that purpose.

In case the plaintiff in an equitable action shows that he is entitled to equitable relief, which, if granted, would be unavailing because of the defendant's inability to perform, the damages sustained by the plaintiff may be recovered in the same action.

APPEAL by the plaintiff, James R. O'Beirne, on behalf of himself and all other bondholders of The Allegheny and Kinzua Railroad Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 20th day of February, 1893, upon the decision of the court, rendered at the New York Special Term, dismissing the plaintiff's complaint.

This action was begun July 15, 1891, to compel the individual defendants Bullis and Barse to convey, by way of mortgage, to the Central Trust Company 30,000 acres and 16,000 acres of timber land, pursuant to their contracts of October 8, 1889, and December 9, 1889, or, in case they were incapable of making such conveyances, that they be adjudged to pay the value of said 46,000 acres to said trust company as security for certain bonds.

In 1889 the Bradford and Corydon Railroad Company and the Allegheny and Kinzua Railroad Company were railroad corporations organized and existing under the statutes of the State of Pennsylvania, with a contemplated main line of thirty miles in length, of which sixteen miles were completed and in operation.

On the 6th day of July, 1889, the Interior Construction and Improvement Company was incorporated under the statute of the State of New Jersey, entitled "An act concerning corporations," approved July 7, 1875, and the several acts supplemental thereto

and amendatory thereof, with a capital stock of $100,000, divided into 1,000 shares of the par value of $100 each.

In the summer of 1889 the defendants, Spencer S. Bullis and Mills W. Barse, being the owners of all the shares of said two railroad corporations, and desirous of obtaining sufficient money to complete the construction of the two roads, applied to I. B. Newcombe & Co., bankers, of the city of New York, to negotiate $250,000 in bonds, to be secured by a first mortgage on the property of said railroads and on 30,000 acres of timber land owned by Bullis & Barse, and situated in the county of McKean in the State of Pennsylvania near said railroads. As a result of this application, a written contract was entered into on the 8th day of October, 1889, between I. B. Newcombe & Co., of the first part, and Spencer S. Bullis and Mills W. Barse of the second part, in which it was recited that the party of the second part owned all the shares of the two railroad corporations, and that they also owned or controlled 30,000 acres of valuable timber land in the county of McKean.

By this contract the party of the second part agreed that a mortgage should be executed on the property of said two railroads and on said 30,000 acres of land to the Central Trust Company, as trustee, for the purpose of securing mortgage bonds to the amount of $250,000, payable thirty years after date, with interest at five per cent per annum, payable semi-annually. The party of the first part undertook to sell at par $210,000 of said bonds and pay the avails over to the party of the second part, for the purpose of completing the main line of their roads. The mortgage was to be executed and the bonds ready for delivery on or before January 1, 1890. This contract contains other provisions which it is not necessary to refer to.

In the summer of 1889 there was a corporation known as the Allegheny and Kinzua Railroad Company, which was organized under the statutes of the State of New York, for the purpose of constructing a road about sixteen miles in length, of which ten miles had, in 1889, been constructed. Spencer S. Bullis and Mills W. Barse owned all the shares of this corporation. The design of the promoters of these three railroad corporations was to have the roads constructed by them form a continuous line.

In November, 1889, I. B. Newcombe & Co. sent an engineer to

examine the road and the timber land proposed to be mortgaged. Barse and Bullis showed the engineer large tracts of valuable timber land, lying along the route of said roads, which Barse and Bullis said they owned, or controlled, and that the tracts contained 200,000 acres. The result of the investigation was that a supplementary contract was entered into December 9, 1889, between I. B. Newcombe & Co., party of the first part, and Spencer S. Bullis and Mills W. Barse, party of the second part, by which the contract of October 8, 1889, was modified. In the later contract it was recited that the party of the second part owned the capital stock of the Allegheny and Kinzua Railroad Company, amounting to $80,000. By this contract it was agreed that the three railroads should be consolidated into a single corporation, under the statutes of the States of New York and Pennsylvania, with a full-paid capital stock of $500,000, and that a mortgage upon the three railroads so consolidated, and on said 30,000 acres of timber land, to secure the payment of $500,000 of bonds, should be given to the Central Trust Company as trustee. This mortgage was in lieu of the mortgage provided for in the contract of October 8, 1889. The party of the first part agreed to sell $260,000 of these bonds at par, for which they were to receive $40,000 of bonds for their services, making $300,000 of bonds to be issued and marketed in the first instance. The $300,000 of bonds so to be issued were to be used to complete the lines of the constituent corporations, amounting to forty-six miles, and $200,000 of the bonds were to be applied to pay for the construction of twenty-four miles of branches and extensions. As an additional security for the $200,000 of bonds Barse and Bullis agreed to convey to said trust company 16,000 acres of timber land as security.

On the 9th of December, 1889, the Interior Construction and Improvement Company entered into a contract with the Allegheny and Kinzua Railroad Company (the New York corporation), and on the same day it entered into another contract with Spencer S. Bullis and Mills W. Barse for the construction of a certain number of miles of railroad in consideration of a certain number of bonds and shares of stock to be issued pursuant to the aforesaid contract.

February 26, 1890, the three railroad corporations were consolidated, pursuant to the statutes of the States of New York and Penn-

sylvania, under the name of the Allegheny and Kinzua Railroad Company, with a capital stock of 5,000 shares of the par value of $100 each. On the 27th of February, 1890, the Allegheny and Kinzua Railroad Company, by Spencer S. Bullis, its president, and Spencer S. Bullis individually, and Sarah E. Bullis, his wife, executed, acknowledged and delivered a mortgage (dated February 1, 1890) to the Central Trust Company upon the property of the corporation and upon 30,954 acres of land to secure the payment of 500 bonds of $100 each, with semi-annual interest at the rate of five per cent per annum. Bonds amounting to $500,000 were executed by the railroad and delivered to the trust company, of which $300,000 were negotiated and are now outstanding, except $15,000, which have been paid.

By the tenth article of the mortgage it was provided that on the application of Spencer S. Bullis any of the timber lands mortgaged by him should be released by the trustee from the lien of the mortgage on payment by Bullis of the sum fixed by appraisers, one to be appointed by him, another by the trust company, and they to select the third. Upon the application made to have 4,379 acres of said timber land released, its value was appraised by the appraisers so appointed at one dollar per acre. The court found that of the 30,954$\frac{19}{100}$ acres covered by the mortgage, Spencer S. Bullis, the mortgagor, had no title to 24,971$\frac{52}{100}$, and also that there were 15,890$\frac{92}{100}$ acres of land covered by the mortgage which the mortgagor did not own both the soil and the timber standing thereon, and that a large part of the land covered by the mortgage was incumbered. The court further found that of all the land so covered by the mortgage only 1,900 acres were held by an unincumbered title, and were timbered as provided in the contracts.

*Frank S. Smith,* for the appellant.

*Albert Moot,* for respondents Bullis, Barse and the railroad company.

FOLLETT, J.:

The facts found by the court upon uncontradicted evidence conclusively show that Spencer S. Bullis and Mills W. Barse perpetra-

ted an atrocious fraud upon I. B. Newcombe & Co., the trust company and every person purchasing the bonds secured by the mortgage. It is found (findings 28 and 29) that the agents of I. B. Newcombe & Co. were escorted by Bullis, at the request of Barse, through large tracts of heavily timbered land in McKean county, near the railroads, who reported its value to the firm, by which report they were induced to attempt to negotiate the bonds. A clear understanding of what these individual defendants intentionally accomplished cannot be better disclosed than by quoting the findings of the court.

*Twenty-fifth finding.*— "That at and before the making and execution and delivery of said several agreements, the defendants Bullis and Barse pretended and represented to the said firm of I. B. Newcombe & Co. that the said 30,000 acres of land were timbered, free and clear of all incumbrances, and contiguous and adjacent to the line of the defendant railroad company as the same was then constructed and projected, and that said land was covered by a large quantity of merchantable timber which would be sufficient to, and would actually provide said railroad with at least 70 tons of freight to the acre, for conveyance over said railroad at rates from 25 to 50 cents per ton, in addition to the percentage accruing to said defendant railroad company from divisions with other lines."

*Forty-sixth finding.*— "That of the lands mentioned and described in said mortgage, Exhibit 'D,' 24,971.52 acres thereof, more or less, being warrants 3708, 3717, 3719, 4874, 4872, 4871, 4917, 3702, 3710, 3712, 3718, 3699, 4335, 4336, 3722, 3732, 2396, 2550, 4913, 5572, 5556, 3703, 3422, 3423, 4875, 4876, 3706, 3734, 3711, 5578, and lots 18 and 34, were not owned by said Bullis at the date of said mortgage."

*Forty-seventh finding.*— "That the following warrants described in the mortgage annexed to the complaint herein were not timbered, or had all timber removed off them at the date of the execution of said mortgage, to wit: Warrants 3734, 3711, 3702, 4335, 4336, 4872, 4875, 4876, 3422, 3423, 5573, 5572, 3703, 3708, 3717, 3719, 3699, 5556, all in the county of McKean, State of Pennsylvania, and lots 41, 42, 43, 34, 35, 25, 27, 33, 18 and 26, located in the town of Red House, county of Cattaraugus, State of New York."

*Fifty-second finding.*— "That the defendant Bullis, at the date

of the execution of the mortgage above mentioned, did not have the title to the soil of certain of the lands described in said mortgage and the timber standing thereon, being warrants Nos. 3708, 3717, 3719, 4874, 4872, 4871, 4917, 4335, 4336, 3710, 3712, 3718, 3699, 3702, 3722, 3732, 2396, 2550, 4913, lot 18, aggregating 15,890.92 acres more or less."

*Fifty-third finding.*— " That the defendant Bullis, at the date of the execution of the mortgage above mentioned, did not have free and unincumbered title to the following lands described in said mortgage, to wit : Warrants Nos. 5572, 5556, 5573, 2396, 2550, 4913, 3706, 3734, 3711, 3714, 3731, 4335, 4336, 3722, 3703, 3708, 4817, 4871, 3717, 3719, 4872, 4874, lot 34."

*Fifty-fourth finding.*— " That of the lands mentioned and described in the said mortgage, ' Exhibit B,' 1,900 acres thereof, being warrants 3731 and 3714, were owned by said Bullis at the date of said mortgage and constitute a compliance with the covenants and agreements of the defendants Bullis and Barse."

These findings are sufficient to show the magnitude and character of the fraud perpetrated by Bullis and Barse. By the forty-ninth and fiftieth findings it appears that much of the land mortgaged was of little value, and by the fifty-first finding, instead of such land being included in the mortgage, that land of the value of at least eighteen dollars per acre should have been included in order to constitute a compliance with the contracts of Bullis and Barse. These findings, in connection with the fact that 4,379 acres of land was valued by the appraisers at one dollar per acre, sufficiently show the value of the land included within the mortgage.

The learned trial court correctly held that a specific performance of the contracts could not be decreed because it did not appear that Bullis and Barse, or either of them, owned timber lands other than those described in the mortgage.

The ground on which the court refused to award damages and dismissed the complaint is not disclosed, but we assume it was on the theory that, as equitable relief could not be granted, the plaintiff was not entitled to legal relief, to damages. We take it to be too well settled to require the citation of many authorities that in case a plaintiff in an equitable action shows that he is entitled to equitable relief which, if granted, would be unavailing because of

the defendant's inability to perform, that the damages sustained by the plaintiff may be recovered in the same action. (*Margraf* v. *Muir*, 57 N. Y. 155–159; *Miles* v. *D. F. I. Co.*, 125 id. 294; *Valentine* v. *Richardt*, 126 id. 272.)

It has been held in many cases brought to compel the specific performance of contracts that damages may be awarded to the plaintiff though specific performance be refused. The right of this plaintiff, who purchased and owns ten bonds of $1,000 each, to maintain this action in behalf of himself and of all other bondholders, is not seriously questioned, and was determined in *Belden* v. *Burke* (72 Hun, 51).

It appears that the trust company on the 4th of April, 1893, three months before this action was begun, declared, pursuant to article 3 of the mortgage, that the whole sum secured by it should become immediately due and payable. The plaintiff showed a sufficient demand upon the trust company to bring an action for the protection of the bondholders and refusal, to entitle him to maintain this action.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment reversed, new trial granted, costs to appellant to abide event.