(2 App. Div. 545.)

## O'BEIRNE v. BULLIS et al.

(Supreme Court, Appellate Division, First Department. March 20, 1896.)

1. SPECIFIC PERFORMANCE—RECOVERY OF DAMAGES.
    When a decree for specific performance of a contract to convey land would be unavailing, because of defendants' inability to perform from want of title, damage may be recovered in the same action for breach of the contract.

2. TRIAL BY JURY.
    An action for specific performance of a contract to mortgage certain land, and to enjoin defendants from doing certain acts prejudicial to plaintiff's rights under the contract, was, on failure of the trial court to retain the action for the purpose of awarding damages for breach of the contract (a decree for specific performance being unavailing, for want of title in defendants), sent back to the trial court. The complaint alleged that defendants had, by fraud, included in the mortgage other property than that agreed to be mortgaged. The answer denied the fraud, but did not set up an inability to perform, alleging, on the contrary, a full compliance with the contract. Held, that it was proper, on the second trial, to refuse a trial by jury, demanded by defendants before their inability to perform was disclosed.

3. PARTIES—ACTION ON CONTRACT.
    Defendants entered into a contract under seal with N. to mortgage certain lands, to secure bonds to be issued by defendants, and negotiated by N., the proceeds to be used by N. in completing defendants' railroad. A deed of trust was made purporting to comply with the contract, but, by fraud, other land was substituted therein, which was valueless. Held that, on refusal of the trustee to sue for the specific performance of the contract to mortgage the land agreed upon, a bondholder, in behalf of himself and all other bondholders, could sue therefor.

Appeal from special term, New York county.

Action by James R. O'Beirne against Spencer S. Bullis, Mills W. Barse, and the Central Trust Company. From a judgment for plaintiff, entered upon a decision after trial, defendants Bullis and Barse appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William W. Cook and Adelbert Moot, for appellant Barse.
Joseph Koch and Frank Rumsey, for appellant Bullis.
Frank Sullivan Smith, for respondent O'Beirne.
Adrian H. Joline, for respondent Central Trust Company.

O'BRIEN, J.   When this case was before the general term on a former appeal (80 Hun, 570, 30 N. Y. Supp. 588), one question seems to have been presented and decided, and that was whether or not the plaintiff could maintain this action as an action in equity for specific performance, when it appeared on the trial that the defendants would be unable to perform the contracts, on the ground that they had no title to the property which they had agreed to mortgage to the trust company, to secure the payment of the bonds. That question was decided in favor of the plaintiff on that appeal, and it is unnecessary to say more upon that question than that we adopt the opinion of the court delivered upon that appeal as a correct exposition of the law upon that question, and agree in that opinion.   It was therein said:

"We take it to be too well settled to require the citation of any authorities that in case a plaintiff in an equitable action shows that he is entitled to equitable relief, which, if granted, would be unavailable, because of the defendant's inability to perform, the damages sustained by the plaintiff may be recovered in the same action.   It has been held in many cases brought to compel the specific performance of contracts that damages may be awarded to the plaintiff, though specific performance be refused."

And we think this rule is expressly recognized by the late case of Haffey v. Lynch, 143 N. Y. 247, 38 N. E. 298, where it is said:

"It is a general rule in equity that the specific performance of a contract *to convey real estate will not be granted when the vendor,* in consequence of a defect in his title, is unable to perform.   In such cases specific performance is denied because the court cannot enforce its judgment, and because, also, it would be oppressive to the vendor.   But if the defect in the title existed at the date of the contract, or was due to some fault, or to some act of the vendor subsequent to the contract, the court will generally entertain an action for specific performance, and retain jurisdiction *for the purpose of awarding* damages for the breach of the contract.   But where, as in this case, the defect in the title arises after the making of the contract, without any fault of the vendor, and the vendee knew of the defect in the title when he commenced his action, it was formerly held the rule that the court would not retain the action for the purpose of awarding damages.   Wiswall v. McGowan, Hoff. Ch. 125; Morss v. Elmendorf, 11 Paige, 277.   This rule was adopted because the vendee should not commence a fruitless action in equity simply to recover there his damages for a breach of contract.   The rule has been modified since the code practice, which authorizes the joinder of legal and equitable causes of action; and while the equitable relief will be denied in such a case, now the action will be retained, and the issue as to the breach of contract and damages will be sent to a jury for trial.   Sternberger v. McGovern, 56 N. Y. 12."

After the case was called, and before any witnesses were examined, counsel for defendants said:   "We would make a formal demand for trial by jury."   This motion was denied, and defendants excepted.   It is claimed that this was error, the insistence being that, as the general term had sent the case back to be tried as an action for damages, defendants were entitled to a trial by jury. To determine whether the motion should then have been granted, the trial judge had before him the pleadings, and his ruling was necessarily based thereon.   If therefrom it had appeared that the action was one for damages only, which would be triable by a jury, there might be some ground for the motion.   If the pleadings presented questions of equitable cognizance, then the court was right in proceeding with the trial, and taking the evidence, with a view

to determining whether or not the plaintiff was entitled to equi·
table relief.  In effect, the complaint alleged—First, that the de.
fendants Bullis and Barse agreed to convey to the trust company
a certain number of acres of unincumbered timber land, to be in-
cluded in a mortgage as security for the issue of bonds, but in-
stead thereof, and fraudulently, and as a compliance with these
contracts, they assumed to mortgage land which was not unincum-
bered, but the greater part of which was subject to mortgages or
other liens or incumbrances, for a large amount of which they had
no title at all; and, second, that the said defendants were. inter-
fering with the construction company engaged in constructing the
railroad under the agreements, and that said defendants are mak-
ing certain unauthorized construction of lines of railroad; and,
third, that the defendant trust company is threatening and is about
to execute a release of lands to the defendants Barse and Bullis,
and that the plaintiff is without an adequate remedy at law to pre-
vent the same.  The relief demanded is a judgment for the im-
mediate specific performance of the agreement to convey, or that
the defendants Bullis and Barse be required to pay to the trustee,
for the security of the bondholders, such a sum of money as the
court shall ascertain to be equivalent to the value of the lands
which they had agreed to convey; and, second, an injunction
against the trust company and the other defendants to prevent the
other acts complained of.  The answer denied the fraud, and
claimed that the defendants Bullis and Barse were not required to
convey the lands until such time as a certain number of miles of
railroad were built and constructed.  It will thus be seen that the
answer does not allege inability to comply with the contract, nor
does it allege that the plaintiff has an adequate remedy at law;
but it puts in issue the plaintiff's charge of fraud, and disputes
the construction of the contract as contended for by the plaintiff;
and the whole defense, in effect, is that the defendants Bullis and
Barse have fully complied with the agreements which they entered
into.  Upon these pleadings, it would have been entirely compe-
tent for the plaintiff to· show, if he could, that Bullis and Barse
had the land which the court could compel them to convey; and
the alternative relief prayed for, which is the usual one in an
action for specific performance, is not a demand for damages in
the ordinary sense, namely, damages which the plaintiff has suf-
fered, and which should be ascertained.  Nor did the plaintiff de-
mand a sum in liquidation to be paid over to him by the defend-
ants.  What he asked was that Bullis and Barse should mortgage
the lands; and, inability to perform not having been set up by way
of defense, it would have been entirely competent for the defend-
ants Bullis and Barse, upon the judgment going against them, to
have complied with their contract, by mortgaging the lands which
the court adjudged they had contracted to mortgage, by acquiring
the title to the lands, and mortgaging them to the trust company,
and thus have relieved themselves from a judgment for the alter-
native relief asked for.  We think, therefore, regard being had to
the pleadings, that the relief demanded by the plaintiff was purely

equitable, and that the refusal to comply at that stage of the case with the formal demand for a jury trial was right; and, if defendants wished for a trial by jury after it appeared that they were unable specifically to perform, they should have then made a specific demand.

The right of either the plaintiff or the trust company, as trustee for the bondholders, to maintain this action to enforce specifically a contract made between Newcombe & Co. and the defendants Bullis and Barse is questioned by the appellants. The contracts were under seal. Newcombe & Co. had been asked to furnish capital to complete the railroad contemplated by the parties. With this end in view, and to obtain the money necessary for the completion of the railroad by the agreements of October 8, 1889, and December 9, 1889, the defendants agreed that they would cause to be created a mortgage or a deed of trust upon the railways, properties, and franchises of several railroad companies that the parties contemplated consolidating into one corporation, and also upon 30,000 acres of land, to be duly executed to the Central Trust Company of New York, as trustee, for the purpose of securing mortgage bonds to an amount specified. Upon the mortgage being executed, thus becoming a lien upon the said railroad, property, and franchises, and upon the said 30,000 acres of land, Newcombe & Co. undertook to sell at par a certain number of the said bonds, and to use the proceeds thereof, for the purpose of completing the railroad which was to be built. As a compliance with this contract, the defendants Bullis and Barse executed a mortgage to the Central Trust Company, which purported to comply with the contract by creating a lien upon the railroad, properties, and franchises, and upon the said 30,000 acres of land. It subsequently appeared that, of the 30,000 acres of land which the mortgage purported to convey to the trust company to secure the payment of the bonds, the defendants had no title to a large portion thereof, and another part was valueless, and did not comply with the contracts, as all the timber upon it had been removed, and the balance, or substantially all of the balance, was covered by other liens and incumbrances. When this conveyance was made to the trust company, if Newcombe & Co. had themselves purchased and held the bonds, and advanced the money required by the contracts to be advanced by them from the proceeds of the bonds, the trust company would have been trustee for Newcombe & Co.; and it is clear that Newcombe & Co., or the trust company, as trustee of the express trust, could have maintained an action for the specific performance of the contract made by the defendants to convey this land to the trust company, to secure the payment of the bonds. Newcombe & Co. having transferred the bonds to bona fide holders for value, such bona fide holders would have been subrogated to the rights of Newcombe & Co. to enforce this contract, and the trust company, as trustee for such bondholders, would have been entitled to commence an action to compel the specific performance of the contract made by the defendants with Newcombe & Co. for the benefit of the bondholders. Whether that cause of action would

have vested exclusively in the trust company, or whether the bond-holders would have been entitled to maintain such an action as those who had become subrogated to Newcombe & Co.'s right of action to have the contracts specifically enforced, is not important, as the plaintiff sues on behalf of himself and all other bondhold-ers; and he could enforce any rights existing in the bondholders or in the trust company as trustee for them. It is settled that an assignee of a contract for the purchase of lands has the same rights to enforce the contract as his assignor. See 22 Am. & Eng. Enc. Law, p. 936, and cases cited. And the purchaser of these bonds would be considered in equity as the assignee of Newcombe & Co.'s interest in their contract with the defendants, whereby the de-fendants agreed to convey to the trust company the said $30,000 acres of land, as security for the payment of the bonds. It is also clear that the execution of the mortgage by the defendants, as a compliance with this contract, whereby they purported to con-vey to the trust company 30,000 acres of land, to secure the pay-ment of the bonds, was a distinct representation both to the trust company and to Newcombe & Co. that they had such a title to the land that the lien provided for by the agreements attached to such land to secure the payment of the bonds. Thus, a contract between the trust company and the defendants was created, which the trust company was entitled to enforce.

We think it clear, therefore, that the plaintiff, suing on behalf of himself and all other holders of the bonds issued under the mort-gage given in pursuance of the contracts between Newcombe & Co. and the defendants, and having alleged a request to the trust company to enforce this contract, which was refused, was entitled to maintain whatever action either Newcombe & Co. had to en-force the contracts, or the trust company, as trustee for him and the other bondholders, had to enforce the covenants of the defend-ants contained in the mortgage which purported to comply with the contracts to convey the lands, so that the same should be held subject to a lien to secure the payment of the bonds. A careful examination of the testimony has satisfied us that the findings of fact by the court below were amply sustained by the evidence, and we are clearly of the opinion that, upon those findings, the plain-tiff was entitled to the relief granted to him by the judgment.

The judgment should therefore be affirmed, with costs. All con-cur.