195 U.S. 606
 25 S.Ct. 118
 49 L.Ed. 340
 SPENCER S. BULLIS, Plff. in Err.,
v.
JAMES R. O'BEIRNE, on Behalf of Himself and All Other Bondholders of the Allegheny & Kinzua Railroad Company, and the Central Trust Company of New York.
 No. 60.
 Argued November 10, 11, 1904.
 Decided December 12, 1904.
 
 The plaintiff in error, Spencer S. Bullis, having been discharged in bankruptcy on September 19, 1899, which discharge covered provable debts existing on November 14, 1898, made application under the New York Code, § 1268, for the cancelation and discharge of certain judgments rendered against him in the supreme court of New York. The defendants in error, judgment creditors of said Bullis, opposed the granting of the order upon the ground that the judgments against Bullis were in an action for fraud, and therefore not discharged under the terms of the bankrupt law. The supreme court of New York denied the application. Upon appeal to the appellate division, fourth department, this judgment was affirmed. 68 App. Div. 508, 73 N. Y. Supp. 1047. Bullis then appealed to the court of appeals of New York, which affirmed the judgment of the court below without opinion. 171 N. Y. 689, 64 N. E. 1119.
 The facts necessary to be noticed in this case are in substance: James R. O'Beirne, in behalf of himself and other bondholders, filed a complaint, setting forth, among other things that, on September 8, 1899, Bullis and one Barse owned the capital stock of three railroads,—two organized under the laws of Pennsylvania and one under the laws of the state of New York, which railroads were constructed for the purpose of reaching timber on large tracts of land. At that time length of the railroads was about 16 miles, but an extension of the lines was contemplated so as to cover about 30 miles. Certain agreements are alleged between said Bullis and Barse and a firm of bankers, Newcombe & Company, of New York,—by the terms of which Bullis and Barse were to execute a mortgage to the Central Trust Company of New York, to secure $250,000 of first-mortgage bonds, running thirty years, which mortgage was to cover the railroad properties and 30,000 acres of timber lands in McKean county, Pennsylvania. The property was to be under the management of a new corporation to be organized with a capital stock of $250,000. Various agreements were made as to the organization and management of said corporation. Another agreement was entered into between the parties, providing for the merger and consolidation of the railroads into a new company, with a capital stock of $500,000, and for a mortgage to the Central Trust Company, as trustee, to secure $500,000 of first-mortgage bonds. The railroad lines were to be extended to 70 miles, and 16,000 acres of timber lands to be included, making 46,000 acres to be owned by the new company. $300,000 of the bonds were to be put upon the market, to represent 46 miles of the railroad. Newcombe & Company were to dispose at par of $260,000 of these bonds, in accordance with the terms of the agreement. Bullis and Barse were to enter into an agreement for consolidating the said railroads into one system, by agreement with the International Interior Construction & Improvement Company. On September 10, 1899, the construction company made a contract with the Allegheny & Kinzua Railroad Company, owned by Bullis and Barse, and one with Bullis and Barse, providing for the construction and consolidation of the railroads and for the distribution of the proceeds of the bonds, a considerable portion of which were to be given to Bullis and Barse.
 The complaint specifically charges: That Bullis and Barse falsely and fraudulently pretended and represented to the said firm of I. B. Newcombe & Company that said tract of 30,000 acres to be conveyed was free and clear from all encumbrances; that all of said land was contiguous or adjacent to the line of said railroad as the same was then constructed or surveyed or projected, and the said land was covered by a large quantity of merchantable timber, capable of yielding and producing 70 tons of freight in timber, lumber, and bark for each acre of land, for transportation over said railroad. It is further alleged that, in fulfilment of said agreements, the defendant railroad corporation, on the 1st day of February, 1890, executed its first mortgage deed of trust to said trust company, conveying to it said railroad properties and franchises, and providing for an issue of bonds limited to $500,000, to be secured by said properties and the 46,000 acres of timber to be conveyed by said Bullis and Barse to said trustee. That the defendants Bullis and Barse caused the said Bullis and Sarah E., his wife, to join with said railroad company in said mortgage, and that by said mortgage they assumed to convey to said trustee land contiguous to the line of said railroad, and free from encumbrances, and covered by a quantity of merchantable timber, aggregating 30,954.10 acres, and which, by the terms of said agreements, was to be a condition precedent to the issue of $300,000 of said bonds, to be used in building and completion of said 46 miles of said railroad; that, in reliance upon the conveyance of said lands, bonds to the amount of $300,000 were issued and were sold by Newcombe & Company, ten of which were purchased by the plaintiff in the action; that all the proceeds of the said bonds have been used in the construction of said lines and in the payment of prior liens upon the property and the constituent lines, and that the defendant railroad company, which is the consolidated company, is wholly without funds, and that the extension thereof is essential to enable it to obtain money to meet its liabilities; that said Bullis and Barse refused to convey to said trustees the remaining 16,000 acres of such land and to provide for the building of the balance of said railroad, whereby the construction company is unable to proceed with its work of completing the same.
 The complaint further alleges that said 30,954.10 acres of land, conveyed by Bullis and his wife, were not free from encumbrances; that the same at the time were subject to prior liens aggregating $159,000, besides interest; that $144,776.07 of said indebtedness still remain unsatisfied; that said land was not covered with merchantable timber, but was waste land, from which the salable timber had been removed, and that a large portion of said land was not adjacent to the line of said railroad, and the timber thereon not accessible to be transported thereon; that a large portion of the land so assumed to be conveyed was not owned by either of the said defendants, and was not conveyed at all by said deed. All of which facts the said Bullis and Barse well knew at the time they made said pretended conveyance, and said conveyance is in reality false and fraudulent; that by reason of the fraud and failure of said Bullis and Barse to convey said land free of liens a great fraud has been committed by them which will cause irreparable injury to the bondholders, including the plaintiff, unless the performance of the said agreements and the conveyance of 30,000 acres of unencumbered timber land to said trustee are specifically decreed.
 The prayer of the complaint is——
 'Wherefore, plaintiff demands judgment that immediate specific performance by the said defendants Bullis and Barse and said defendant railroad company of their said agreements to convey unto the trustee of said defendant railroad company's mortgage, and place under the lien of said instrument 30,000 acres of timber land contiguous or tributary to the line of railroad of said railroad company, as in said agreements stated, free of all encumbrance of whatsoever nature prior to the said mortgage above mentioned; or that said defendants pay to said trustee, for the security of said bondholders, such a sum of money as the court shall ascertain to be equivalent to the value of said lands and real estate, conveyed as aforesaid, which are not in conformity with the terms of said several agreements, and said bonds, and the mortgage, or deed of trust, securing the same; and in addition thereto 16,000 acres of like timber land, in all respects similarly situated, and free from encumbrance, as security to authorize the issue of $200,000 of bonds in said agreements specified, and set apart for the construction of the 24 miles of railroad of said company additional to the 46 miles above mentioned.' And for injunction and general relief.
 The case was tried at special term of the New York supreme court. That court dismissed the complaint, holding that, as Bullis and Barse did not own the lands, specific performance could not be decreed, and the case could not be held for the assessment of damages. This judgment was reversed by the general term. 80 Hun, 570, 30 N. Y. Supp. 588. Upon appeal taken by the Allegheny & Kinzua Railroad Company, one of the defendants, this judgment in general term was affirmed by the court of appeals of New York. 151 N. Y. 372, 45 N. E. 873. Bullis and Barse, after the reversal at general term, went to trial at special term, and, upon the allegations of fraud, findings were made, among others: That Bullis and Barse pretended and represented to the said firm of Newcombe & Company that the 30,000 acres of land were timbered, free and clear of all encumbrances, and contiguous and adjacent to the line of the defendant railroad company, as the same was then constructed and projected, and that said land was covered by a large quantity of merchantable timber, which would actually provide said railroad company with at least 70 tons to the acre, for conveyance over said railroad at rates from 25 to 50 cents per ton, in addition to the percentage accruing to said defendant railroad company from divisions of other lines. That said agreements were entered into at the request of Bullis and Barse; that engineers were sent from New York to inspect the timber on the land to be conveyed; they were escorted through certain timber lands by said Bullis, and these lands were heavily timbered, and said Bullis stated that said lands were to be placed under the mortgage to the trustee, and a report in accordance with this statement was made by the engineers, and upon this report said Newcombe & Company embarked in the enterprise, and entered into said scheme of consolidation and extension. That the lands so defined and pointed out were worth from $18 to $20 an acre. That Bullis and Barse had stated to Newcombe & company that the mortgage was to be a first lien, the lands to be well timbered, and contiguous and tributary to said line of railroad; that said trust mortgage was approved and accepted in the belief that said representations were true in fact, and that Bullis and Barse were, in good faith, performing their said covenants.
 The court further found that the plaintiff was, in fact, deceived by said statements and representations; that said statements and representations were false; that said agreement was, in fact, fraudulently made with respect to the lands agreed to be conveyed by Bullis and Barse; that a great part of the lands included in the deed was not the property of Bullis, and the value of that owned by him, and not timbered, was $13,350, while that apparently covered by the deed, but not owned by him, was worth $175,502.77, and a considerable part of that included in the conveyance was encumbered; that the statements of Bullis and Barse with respect to said timber lands were false and fraudulent, and made with intent to deceive.
 As a conclusion of law, the court decided that it had jurisdiction to proceed in the cause by reason of the fraud practised by the defendants Bullis and Barse in the premises, and because of the fact that the plaintiff had been deceived by the fraudulent statements and misrepresentations of the defendants. This decision was affirmed. O'Beirne v. Bullis, 2 App. Div. 545, 38 N. Y. Supp. 4. Upon appeal to the court of appeals of New York this judgment was affirmed. 158 N. Y. 466, 53 N. E. 211.
 It appeaning that Bullis and Barse were unable to specifically perform the original agreement, but that they were liable for false representations, judgment was rendered against them in favor of the Central Trust Company, representing the bondholders, in the sum of $341,745.65, and for the plaintiff in the sum of $3,586.40.
 Messrs. Adelbert Moot and Charles S. Cary for plaintiff in error.
 [Argument of Counsel from pages 612-615 intentionally omitted]
 Messrs. Frank Sullivan Smith and Adrian H. Joline for defendant in error.
 Statement by Mr Justice Day:
 Mr. Justice Day delivered the opinion of the court:
 
 
 1
 This action involves the construction of § 17 of the bankrupt act of 1898 (30 Stat. at L. 550, chap. 541, U. S. Comp. Stat. 1901, p. 3428), as it stood prior to the amendment of February 5, 1903 [32 Stat. at L. 797, chap. 487].[1] So far as it pertains to this case, this section is as follows:
 
 
 2
 'A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as . . . (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another, . . . (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in a fiduciary capacity.'
 
 
 3
 In Crawford v. Burke, decided at this term, 195 U. S. 176, ante, p. 9, 25 Sup. Ct. Rep. 9, this court held that subd. 4 of this act was limited to frauds, embezzlements, misappropriations, or defalcations while acting in an official character, or in a fiduciary capacity, and did not apply to other debts or obligations fraudulently created. The question, therefore, presented in this case, is, Was the judgment against Bullis and Barse, as finally reached in the New York courts, one in 'an action for fraud' within the meaning of the act? It is distinctly charged in the complaint, and found in the judgment, that the agreement was fraudulently made; that Bullis and Barse falsely and fraudulently pretended that the large tract of timber land which they were to put under the mortgage for the security of the bondholders was free from all encumbrances; that it was near the line of the projected railroads, and covered by a large quantity of merchantable timber; when, in fact, as Bullis and Barse well knew, the 30,000 acres of timber land actually mortgaged was not free from encumbrances, but was subject to $159,000 and interest of prior encumbrances, and that it was waste land from which the timber had been removed; that the lands were not adjacent to the lines of the railroads; that the timber was not accessible, and that a large portion of the land to be conveyed was not owned by either of the defendants; that all of these facts were well known to Bullis and Barse when they made the false and fraudulent representations aforesaid, and were relied upon to the prejudice of the bondholders. The New York courts found that the agents of the New York brokers attempting to negotiate the bonds, when they went to see the lands, were shown those not included in the mortgage, and which were falsely and fraudulently pointed out as being the intended lands. Under these allegations and proofs the New York courts have seen fit to render a money judgment, not for specific performance, as upon contract, but for the frauds charged against the defendants.
 
 
 4
 As was said of the action and the relief granted, in the opinion of the appellate division (68 App. Div. 508, 73 N. Y. Supp. 1047, affirmed in 171 N. Y. 689, 64 N. E. 1119): 'The action for specific performance, in the strictest sense thereof, was founded upon the actual, positive fraud of the defendants Bullis and Barse. They had in fact, in pretended compliance with their agreements, conveyed to the designated trustee 30,000 acres of land. The plaintiff alleged that the defendants fraudulently included in this conveyance lands not owned by the grantors, and the bulk of the tract was not timber land, was encumbered, and was not adjacent to the railroad lines described. . . . The gist, the intrinsic ingredient of the action, was consequently the fraudulent scheme—the false representations—of these defendants.'
 
 
 5
 Considerable argument was made by the learned counsel for the plaintiff in error as to the essential allegations of a pleading where relief for fraud is sought. It is said that there is no averment in the complaint in this case of knowledge or intent to deceive upon the part of the plaintiff in error; but it is averred that the representations were falsely and fraudulently made, with the intent to further the pecuniary interest of the plaintiff in error, and were known to be false when made. Such allegations have frequently been held the equivalent of averments of specific intent. Indeed, it is difficult to perceive how a statement falsely and fraudulently made can be otherwise than intended to deceive. A statement fraudulently made, with knowledge of its falsity, must necessarily be intended to deceive. Bank of Montreal v. Thayer, 2 McCrary, 1, 7 Fed. 625, and cases cited in the opinion. It is argued that Bullis, one of the defendants, regarding the case as one for fraud, demanded a jury trial, which was denied him, and that this shows the character of the case. But, as appears in the opinion of the New York court of appeals (158 N. Y. 466-468, 53 N. E. 211), when the demand for a jury trial was made the defendants had not set up their inability to perform the contract, but had taken issue upon the allegations of fraud and misrepresentation. In this attitude of the case it was held that a jury trial was properly denied.
 
 
 6
 But it is unnecessary to further consider questions of practice peculiar to the jurisdiction where the judgment was rendered. Whether the complaint sufficiently charged fraud to warrant the judgment given is not a Federal question. Forsyth v. Vehmeyer, 177 U. S. 177, 180, 44 L. ed. 723, 725, 20 Sup. Ct. Rep. 623. The question for this court is whether the judgment rendered by the New York court is in an action for fraud. If so, it is excepted from the effect of a discharge in bankruptcy.
 
 
 7
 We think an inspection of the record as well as the interpretation put upon the pleadings and judgment by the courts of New York in the various trials and proceedings had show that the relief was granted upon the ground of fraud. When the case was first before the New York court of appeals, Judge Gray, delivering the opinion of that court, said:
 
 
 8
 'The theory of the complaint and the tendency of the proof upon the trial were that a fraudulent scheme was devised by Bullis and Barse, having for its object the consolidation of certain railroad properties, owned and controlled by them, and the issuance of a large number of bonds by the consolidated company, which should be placed with the public at par through the cooperation of Newcombe & Company, whose assistance to the scheme, in the negotiation of the bonds, should be gained by representations and agreements of such a nature, as to the timber tracts to be furnished as additional security under the mortgage, that the bonds would appear to be attractive and salable securities. We are not called upon, at the present time, to pass upon the liability of Bullis and Barse for the parts they have played in the development and consummation of this scheme, inasmuch as they have gone back to a new trial; but, on the face of this record, that the evidence amply warranted the findings by the trial court is not to be denied; and it would have justified the granting of relief to the plaintiff had the case been in a shape to make that possible.' 151 N. Y. 372-384, 45 N. E. 873-876.
 
 
 9
 When the case was sent back for trial, after it had been held that it might be retained for the assessment of damages, in its conclusions of law the supreme court at special term decided that it 'had jurisdiction to proceed in the cause by reason of the fraud practised by the defendants Bullis and Barse in the premises.' This manner of exercising jurisdiction by the lower court was expressly affirmed by the supreme court at general term (2 App. Div. 545, 38 N. Y. Supp. 4), and finally by the court of appeals of New York (158 N. Y. 466, 53 N. E. 211). In the latter case the court said: 'The theory upon which the decision proceeded was that they [Bullis and Barse] devised a fraudulent scheme for the consolidation of certain railroads owned and controlled by them, issued bonds upon false representations as to the timber lands to be furnished as added security under the mortgage to make the bonds secure and salable; that upon those facts the court would have been justified in granting relief to the plaintiff against them, and that the corporation, having been the instrumentality employed by them, was also liable. Thus it was that the liability of the appellants was involved in the decision. We adhere to the principle of our decision upon that appeal.'
 
 
 10
 It is thus apparent that the courts of New York, in conformity to their own practice, have rendered a judgment against Bullis and Barse by reason of the fraudulent scheme found, and because of the fraudulent representations made to and relied upon by the parties to whom the relief was granted. The Federal question is, Is such a judgment entitled to be discharged in bankruptcy? Under the bankrupt law of 1867 it was provided: 'No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy; but the debt may be proved, and the dividend thereon shall be a payment on account of such debt.' Rev. Stat. § 5117.
 
 
 11
 In the law of 1898, for reasons which have been the subject of much diversity of view in the courts, but which were sufficient in the judgment of Congress in passing the act to necessitate a change, it is provided, instead of exempting debts created by fraud from the operation of the discharge, that only judgments in actions for fraud shall be exempted. Under this act (as it was before the passage of the act of February 5, 1903) claims grounded in fraud will not be exempted unless reduced to judgment; but the essential character of the fraud which is here meant has not been changed. By the decisions of this court, which are collected in the opinion delivered in Forsyth v. Vehmeyer, 177 U. S. 177, 180, 44 L. ed. 723, 725, 20 Sup. Ct. Rep. 623, it was held, reviewing the former cases in this court, that, under the act of 1867, the fraud referred to meant positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, which may exist without an imputation of bad faith. 'Such a construction of the statute,' it was said in Neal v. Clark, 95 U. S. 704, 709, 24 L. ed. 586, 587, 'is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency. A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system.' This language, we think, equally applies to the present case. The difference is that, under the act of 1898, claims for fraud prosecuted to judgment will not be exempted. The reason for this change, as suggested by Mr. Justice Brown, in delivering the opinion in Crawford v. Burke, may be that Congress did not intend to offer any inducement to change unliquidated claims into actions for fraud, and therefore limited the exception from the operation of the discharge to such cases only as had been litigated and reduced to actual judgment. When such is the case we think a correct interpretation of the law does not require a close examination into the form of the action to determine whether technically it is one ex delicto or otherwise, but the real question is, Was the relief granted in the judgment based upon actual, as distinguished from constructive, fraud of the bankrupt? If the judgment is thus founded, whatever the form of the action, it is the intent and purpose of the law that the bankrupt shall not be discharged from it, but shall still rest under its obligation, so far as the bankrupt law is concerned.
 
 
 12
 As thus interpreted, we think there can be no question that the judgment rendered in this case was based upon the fraud of Bullis and Barse. The facts charged and found showed false and fraudulent representations as to the character of the property which was to be the security of those who should purchase the bonds, and resulted in depriving them wrongfully of valuable rights. These findings were held sufficient in the state tribunals to warrant relief on the ground of fraud, and the judgment in this case is, in our opinion, in an action for fraud within the meaning of the bankrupt law.
 
 
 13
 The judgment of the Supreme Court of New York is, therefore, affirmed.
 
 
 
 [1]
 U. S. Comp. St. Supp. 1903, p. 411.