JAMES R. O'BEIRNE, on Behalf of Himself and all Other Bondholders of THE ALLEGHENY AND KINZUA RAILROAD COMPANY, Respondent, *v.* THE ALLEGHENY AND KINZUA RAILROAD COMPANY, Appellant, Impleaded with Others.

1. EQUITY — IMPOSSIBILITY OF SPECIFIC PERFORMANCE — LEGAL RELIEF. When it appears upon the trial of an action, in which the complaint sets forth a cause of action for specific performance, that, although the plaintiff is entitled to equitable relief, it cannot be granted because of the defendant's inability to perform, the complaint should not be dismissed, but the plaintiff should be allowed to establish his right to legal relief under a claim for damages sustained by a breach of the agreement relied on.

2. TRUST MORTGAGE — RIGHTS ENFORCEABLE BY BONDHOLDER, ON REFUSAL OF TRUSTEE TO SUE. Whatever rights, as against the mortgagor, are vested in the trustee of a mortgage given to secure the payment of bonds, inure to the benefit of the bondholder and are enforceable by him, in case of refusal or neglect on the part of his trustee to act for him upon request.

3. RAILROAD MORTGAGE — AGREEMENT TO FURNISH ADDITIONAL UNDERLYING SECURITY — ENFORCEMENT OF PERFORMANCE. On the refusal of the trustee of a railroad mortgage to sue for specific perform-

ance of an agreement made by the mortgagor company and its organizers and promoters, being the ostensible owners of real estate contiguous to the railroad, to convey such real estate to the trustee as additional security under the mortgage, a mortgage bondholder may maintain such an action against the mortgagor company, on behalf of himself and other bondholders similarly situated, before default upon the bonds.

4. Bondholder's Action — Relief in Lieu of Specific Performance. If, in an action instituted by a railroad mortgage bondholder, on the refusal of the trustee to sue, for specific performance of an agreement, made by the mortgagor company and its organizers and promoters, to furnish additional underlying security for payment of the mortgage bonds, it appears that the liability exists but performance cannot be decreed, the court should award the plaintiff such relief as it deems him entitled to.

*O'Beirne* v. *Bullis*, 80 Hun, 570, affirmed.

(Argued December 7, 1896; decided January 19, 1897.)

Appeal from an order of the General Term of the Supreme Court in the first judicial department, entered November 2, 1894, which reversed a judgment in favor of defendant entered upon a decision of the court dismissing the complaint upon the merits on trial at Special Term, and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot, W. W. Cook* and *Frank Rumsey* for appellant. Plaintiff is a stranger to the contracts under seal which he seeks to enforce in this action, and, therefore, he has established no cause of action against the defendants. ( *Wheelock* v. *Lee*, 74 N. Y. 495; *Spencer* v. *Field*, 10 Wend. 87; *Briggs* v. *Partridge*, 64 N. Y. 357; *Kiersted* v. *O. & A. R. R. Co.*, 69 N. Y. 343; *Taft* v. *Brewster*, 9 Johns. 334; *Stone* v. *Wood*, 7 Cow. 455; *Guyon* v. *Lewis*, 7 Wend. 26; *Schaefer* v. *Henkel*, 75 N. Y. 378; *Tuthill* v. *Wilson*, 90 N. Y. 423; *Morris* v. *Rexford*, 18 N. Y. 552; *Bank of Beloit* v. *Beale*, 34 N. Y. 473; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Kennedy* v. *Thorp*, 51 N. Y. 176; *Acer* v. *Hotchkiss*, 97 N. Y. 395; *Terry* v. *Munger*, 121 N. Y. 161; 2 Pom. Eq. Juris. § 897.) There is nothing in *Lawrence* v. *Fox* (20

N. Y. 268) that warrants or will sustain a recovery in this action. (*Gifford* v. *Corrigan*, 117 N. Y. 262; *Davis* v. *Morris*, 36 N. Y. 569; *Turk* v. *Ridge*, 41 N. Y. 201; *Garnsey* v. *Rogers*, 47 N. Y. 233; *Merrill* v. *Green*, 55 N. Y. 270; *Vrooman* v. *Turner*, 69 N. Y. 280; *Pardee* v. *Treat*, 82 N. Y. 385; *Root* v. *Wright*, 84 N. Y. 72; *Seward* v. *Huntington*, 94 N. Y. 104; *Wheat* v. *Rice*, 97 N. Y. 296.) The terms of the mortgage are fatal to plaintiff's right as a bond-holder to bring or maintain this action for damages before default, because such an action could not be brought and maintained before default; and such an action could only be brought by the trustee, or by a majority of the bondholders if the trustee refused to bring it. (Jones on R. R. Securities, §§ 361–363.) Plaintiff's bonds being in form negotiable railroad bonds, are subject to the rules applicable to negotiable paper, and when plaintiff purchased them he is conclusively deemed to have relied upon them, as issued, and the mortgage back of them, as executed; hence, he proved no cause of action. (*Bank of Rome* v. *Village of Rome*, 19 N. Y. 20; *C. Nat. Bank* v. *Faurot*, 149 N. Y. 535; *Briggs* v. *Partridge*, 64 N. Y. 363; *Van Weel* v. *Winston*, 115 U. S. 228.) This being a suit in equity, plaintiff has shown no special facts or circumstances entitling him to have the contracts in question enforced by a court of equity; hence, he cannot maintain this suit. (*Belden* v. *Burke*, 147 N. Y. 542.) There having been no default on the bonds or mortgage when plaintiff commenced this action, he has shown no reason why an ordinary foreclosure would not have furnished him an adequate remedy; hence, he cannot maintain this action as an action at law for damages. (*Slauson* v. *Watkins*, 86 N. Y. 597; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *Hallingsworth* v. *Flint*, 101 U. S. 591; *Dean* v. *M. E. R. Co.*, 119 N. Y. 540.) Plaintiff had ample opportunity to find out about the title, timber and incumbrances on the land described in the mortgage before he took his bonds, and it is not alleged, proved or found that he did not learn the truth; hence, plaintiff cannot maintain this action for damages for any pretended fraud. (*Long* v. *Warren*, 68

N. Y. 426; *Slaughter* v. *Geeson*, 13 Wall. 383; *Davis* v. *Sims*, H. & D. 234; *S. M. Co.* v. *Adam*, 23 Pick. 256; *Mooney* v. *Miller*, 102 Mass. 220; *McIntyre* v. *Buell*, 132 N. Y. 197; *Van Weel* v. *Winston*, 115 U. S. 228.) The plaintiff cannot maintain this action, because he has no assignment of a cause of action from Newcombe & Co., or any of the parties to the original contracts. (Jones on R. R. Securities, §§ 361–363; *Tuthill* v. *Wilson*, 90 N. Y. 423; *Van Weel* v. *Winston*, 115 U. S. 228.) The original contracts show that no lands were ascertained, and no agreement about lands was made; hence, the original contracts are not enforceable, and will not sustain this action as an action for damages. (*Stanton* v. *Miller*, 58 N. Y. 192; *Shakespeare* v. *Markham*, 72 N. Y. 400; Pollock on Cont. 177.) The plaintiff having accepted the bonds under the mortgage, he cannot now repudiate the mortgage and collect damages on the contracts, even if the contracts were enforceable. (*Tuthill* v. *Wilson*, 90 N. Y. 425; *McConihe* v. *Fales*, 107 N. Y. 404; *Van Weel* v. *Winston*, 115 U. S. 228.) The plaintiff cannot have the contracts and the bonds and mortgage read together as one contract, because the contracts are under seal and he is not a party to them and has no legal interest in them; also because he repudiates the mortgage in his complaint, and he may not now change face and ask to have it considered part of the contracts. (*Tuthill* v. *Wilson*, 90 N. Y. 428; *McConihe* v. *Fales*, 107 N. Y. 408; *Van Weel* v. *Winston*, 115 U. S. 228; *People* v. *Denison*, 80 N. Y. 656; 84 N. Y. 272; *Southwick* v. *F. N. Bank*, 84 N. Y. 420; *Gibson* v. *Lyon*, 115 U. S. 447.) If the contracts to which plaintiff is not a party, and in which he had no legal interest, could be read with the mortgage, as forming one contract, the mortgage is the last and controlling part of that contract, and, as it stands unreformed and unrescinded, the plaintiff has no cause of action. (*Tuthill* v. *Wilson*, 90 N. Y. 428; *McConihe* v. *Fales*, 107 N. Y. 408; *Van Weel* v. *Winston*, 115 U. S. 228.) The mortgage being the last and only complete agreement between the parties concerning the lands, the failure of the parties to

incorporate the usual covenants against incumbrances and of seizin, warranty and title is fatal to the plaintiff's action, because he must stand upon the covenants which he finds in the mortgage under which his bonds were issued. (*Tuthill* v. *Wilson,* 90 N. Y. 427; *McConihe* v. *Fales,* 107 N. Y. 408.) Covenants may not be raised against defendants by implication, but the bondholders must look to their mortgage for all covenants of title, quality, or against incumbrances. (*Tuthill* v. *Wilson,* 90 N. Y. 428; *McConihe* v. *Fales,* 107 N. Y. 408; 4 R. S. [8th ed.] 2452, § 140.) An action to clear a cloud from the title or for specific performance does not lie in behalf of a mortgagee seeking it on the ground that his security is not such as was represented or contracted for; nor will such suit lie in an action like this one brought by a bondholder. (*Tillinghast* v. *T. & B. R. R. Co.,* 48 Hun, 420; 121 N. Y. 649; *Levy* v. *Brush,* 45 N. Y. 589; *Stoddard* v. *Hart,* 23 N. Y. 556.) Plaintiff, being a stranger to the oral promises, and having no legal interest therein, cannot maintain this action to enforce them, and they are not enforceable if he could maintain this action. (*Eighmie* v. *Taylor,* 98 N. Y. 288; *Bates* v. *Delavan,* 5 Paige, 299.)

*Frank Sullivan Smith, Hamilton Odell* and *C. Walter Artz* for respondent. This plaintiff has standing in court to bring this suit in behalf of himself and all other bondholders. (*Belden* v. *Burke,* 72 Hun, 51; *Woodbury* v. *A. & K. R. R. Co.,* 72 Fed. Rep. 371; *Coster* v. *Mayor, etc.,* 43 N. Y. 399.) The agreements of the moving defendants are such as entitle the plaintiff to some relief of the nature which the cases indicate to be a decree for specific performance, or, in the event of the impossibility of full and complete execution, a judgment for damages or a rescission. (*Lough* v. *Outerbridge,* 143 N. Y. 271; *Phillips* v. *Thompson,* 1 Johns. Ch. 131; *Haffey* v. *Lynch,* 143 N. Y. 241; *Margraf* v. *Muir,* 57 N. Y. 155; *Barlow* v. *Scott,* 24 N. Y. 40; *Bradley* v. *Aldrich,* 40 N. Y. 504; *Pumpelly* v. *Phelps,* 40 N. Y. 59; *Herrington* v. *Robertson,* 71 N. Y. 280; *Marquat* v. *Mar-*

*quat*, 12 N. Y. 336; *Welles v. Yates*, 44 N. Y. 525, 531; *Gilbert v. Peteler*, 38 Barb. 489; *Miles v. D. F. I. Co.*, 125 N. Y. 294; *Valentine v.Richardt*, 126 N. Y. 272.) Even if the plaintiff has not prayed for the proper relief, his suit should not be dismissed. (*Bergmann v. Salmon*, 79 Hun, 456, 459; *Emery v. Pease*, 20 N. Y. 62; *Bradley v. Bosley*, 1 Barb. Ch. 125; *Bostwick v. Beach*, 103 N. Y. 414, 419; *Benedict v. Benedict*, 85 N. Y. 625; *Williams v. Slote*, 70 N. Y. 601; *Armitage v. Pulver*, 37 N. Y. 494; *Cogswell v. N. Y., N. H. & H. R. R. Co.*, 105 N. Y. 319; *Mackellar v. Rogers*, 109 N. Y. 468; *Eickwort v. Powers*, 17 N. Y. Supp. 137; 137 N. Y. 628; *Center v. Weed*, 138 N. Y. 532; *Dammert v. Osborn*, 140 N. Y. 30.) A court of equity will grant such relief as the nature of the case and the facts as they exist at the close of the litigation demand. The plaintiff, therefore, in a suit in equity may prove any fact at the trial which is embraced within the issues, although such fact may have happened subsequent to the bringing of the suit. (*Peck v. Goodberlett*, 109 N. Y. 180, 189; *Dammert v. Osborn*, 140 N. Y. 30; *Cuff v. Dorland*, 55 Barb. 481; *Brown v. Miles*, 61 Hun, 453; *Stevenson v. Buxton*, 15 Abb. Pr. 352; *N. Y. I. Co. v. N. W. Ins. Co.*, 23 N. Y. 357; *Matthews v. Matthews*, 133 N. Y. 679; *Miles v. D. F. I. Co.*, 6 N. Y. Supp. 955; 125 N. Y. 294.)

Gray, J. The plaintiff, on behalf of himself as a bondholder of the defendant railroad company and of all other bondholders similarly situated, brought this action to compel the specific performance of certain agreements, whereby some 46,000 acres of timber land, in the aggregate, contiguous or tributary to the line of the railroad, were to be conveyed to the trustee in the mortgage made by the railroad company; or to compel the defendants to pay the trustee, for the security of the bondholders, the value of said lands. The defendants, against whom this relief is prayed for, are the Allegheny & Kinzua Railroad Company and two certain persons named Bullis and Barse. It seems that, in 1889, there were two partially

48

completed railroads in Pennsylvania, operated by the Bradford
& Corydon Railroad Company and the Allegany & Kinzua
Railroad Company.   There was also in New York a parti-
ally completed railroad, operated by a corporation of the
same name as the one in Pennsylvania, viz.: The Allegany
& Kinzua Railroad Company.   Of these three railroad com-
panies the defendants Bullis and Barse owned and held all the
capital stock.   These railroads penetrated a large tract of timber
lands in McKean county, Pa.   Bullis and Barse devised a
scheme, in connection with a firm of New York brokers,
styled Newcombe & Co., for the reorganization of the two
Pennsylvania companies and in pursuance thereof an agree-
ment was entered into between them on October 8th, 1889,
which recited that Bullis and Barse were the owners and
holders of the capital stock of the companies and that they
were also owners of, or controlled 30,000 acres of land in
McKean county; on which were extensive and valuable tracts
of timber, the product of which they were desirous of
marketing through the completion of the railroads.   It pro-
vided that Bullis and Barse should cause to be executed a
mortgage, or deed of trust, upon the property and franchises
of the railroad companies and upon these 30,000 acres of land
to the Central Trust Company, as trustee, for the purpose of
securing bonds to the amount of $250,000; which Newcombe
& Co. agreed to sell upon certain terms.   Bullis and Barse
were to place the ownership and control of the railroad prop-
erty and franchises and of the 30,000 acres of land in a new
corporation, to be created under the laws of Pennsylvania.
The lands so to be owned by the corporation and covered by
the lien of the mortgage, or deed of trust, were to be con-
tiguous or tributary to one or the other of the railroads and
should be timbered and profitable to the corporation.   Subse-
quently engineers were sent out, at the request of Bullis and
Barse, by Newcombe & Co. and another concern, whom they
had brought the matter before; who visited and inspected the
timber lands in McKean county.   In consequence of their
report and suggestions, the October plan was changed and a

new and larger scheme was resolved upon on December 9th, 1889. Upon the visit of the engineers to the timber lands, Bullis had accompanied them and had pointed out, somewhat indefinitely, what would be the boundaries of the 30,000 acres. All the lands shown were well timbered and were situated on either side of the line of the railroad. The agreement of December 9th, modifying that of October 8th,. between New-combe & Co. and Bullis and Barse, recited the ownership of the capital stock of the Allegany & Kinzua Railroad Company, (the New York corporation), by Bullis and Barse and that it was proposed to consolidate it with the two Pennsylvania companies mentioned · in the October agreement. Bullis and Barse were to cause the merger and consolidation of the three companies to be effected, with a capitalization of $500,000 of stock and with a bonded debt of $500,000, secured by a mortgage to the Central Trust Company, as trustee; which should be a first lien upon the properties and franchises of the new corporation and should include 30,000 acres of timber land for the first 46 miles of railroad constructed and completed, and 16,000 acres for the additional 24 miles of railroad to be constructed. Only $300,000 at par value of the bonds were to be put upon the market at first, representing 46 miles of the said railroads, and the remaining $200,000 were reserved for the purpose of completing the extensions of the roads. Newcombe & Co. were to negotiate the sale of bonds at par upon certain terms and conditions. Bullis and Barse were to cause a contract to be entered into with the Interior Construction & Improvement Company, a New Jersey corporation, for the purpose of effecting the proposed merger and consolidation of the several railroads and the issue by the new corporation of said capital stock and bonds. On the same day, accordingly, there was an agreement made between the Interior Construction, &c., Company and the New York corporation of the Allegany & Kinzua Railroad Co., whereby the former company agreed to effect the proposed consolidation; to complete the construction of the railroads without delay, and to extend them so

that the consolidated company should own a completed road of 70 miles in length. This agreement provided for the issuance by the consolidated company of $500,000 in bonds, to be secured by a mortgage which was to cover, in addition to the railroad properties and franchises, 1,000 acres of timber land for each mile of railroad constructed and completed, contiguous or tributary to the consolidated railroad, in this manner, viz. : For the first 46 miles of railroad so completed 30,000 acres and for the additional 24 miles of railroad to be completed 16,000 acres. This agreement was executed on behalf of the railroad company by the defendant Bullis, as its president. On the same day, another and third agreement was made between the Interior Construction, &c., Company and Bullis and Barse; which refers to the previous agreement and states the disposition to be made by the Interior Construction, &c., Company of the bonds and stock of the new corporation. By that agreement Bullis and Barse, among other things, agreed " to cause the proper amount of timber land to be placed under the lien of said mortgage, or deed of trust, to be executed by said merged and consolidated corporation, as provided in said agreement ; " thereby referring to the one previously described between the construction company and the Allegany & Kinzua Railroad Company of New York. The consolidation of these three railroad corporations was effected in February, 1890, under the name of the present defendant, the Allegheny & Kinzua Railroad Company, and, thereupon, the new company executed and delivered to the defendant, the Central Trust Company, as trustee, its mortgage to secure bonds for the aggregate amount of $500,000, par value. This mortgage by its terms covered all the railroad properties and franchises and the defendant Bullis and his wife united in its execution, as it is expressly found, " with the knowledge and approval of the defendant Barse." There was a recital in the mortgage that Bullis was the owner in fee of the real estate thereinafter described and it purported to convey to the trustee, on the part of Bullis and his wife, numerous tracts and parcels of land, to the extent of $30,954\frac{19}{100}$ acres. There was, also, a

covenant by the mortgagors that the railroad company should cause to be conveyed to the trustee, in addition to the 30,000 acres of timber land conveyed by that instrument, 16,000 more acres, as a further security for the payment of the bonds, upon the completion by the railroad company of the 70 miles of railroad. It was found as a fact by the trial judge, that the execution of this mortgage by Bullis and wife was in apparent and partial performance of the undertakings and contracts contained in the earlier agreements and of the scheme of consolidation and extensions. The bonds were executed and delivered by the railroad company to the trustee and of the $300,000, which were to be presently disposed of, all but $40,000, which Newcombe & Co. retained for their commissions, were duly sold by that firm to the plaintiff and his co-bondholders in good faith, and the finding further is that the proceeds of these $260,000 of bonds were applied to the extinguishment of liens and to the construction of 46 miles of railroad. $125,000, being the proceeds of the sale at par of $125,000 of these bonds, were paid over to the defendants Bullis and Barse, for the purpose of extinguishing liens and incumbrances upon the properties of the various constituent companies. It was also found as a fact, that the bonds were retained and sold by Newcombe & Co. "with full knowledge and reliance upon the said several agreements * * * and particularly upon the provisions contained therein for the conveyance to the defendant trust company of 30,000 acres of timber land, as a further security for said bonds, of the character described in said agreements and of the kind and value stated and described by said defendants Bullis and Barse." It was also found, in substance, that the defendants Bullis and Barse, at the time of the agreements which have been described, had represented to Newcombe & Co. that the said 30,000 acres of land were timbered, clear of incumbrances, contiguous to the line of railroad, as the same was constructed and projected, and that said land was covered by merchantable timber sufficient to provide a railroad with, at least, 70 tons of freight to the acre for conveyance over

the railroad at certain rates.   It is also found that Newcombe & Co. approved and accepted the said mortgage, relying upon the representations of Bullis that he was the owner of the tracts of land described therein, and believed that, by reason of such representations, Bullis and Barse were in good faith performing their covenants and agreements in that behalf, and in reliance thereon they proceeded to perform their agreements with said Bullis and Barse.   Bullis and Barse failed and refused to continue the work of construction, in August 1890.   Certain findings of fact show that of the lands mentioned and described in the mortgage, some portions were not owned by Bullis at the date of its execution ; that some portions were not timbered, or had all the timber removed from them ; that Bullis did not have the title to the soil of some portions ; that he did not have free and unincumbered title as to certain portions, and that " of the lands mentioned and described in the said mortgage, 1,900 acres thereof   *   *   * were owned by said Bullis at the date of said mortgage."   The finding also is that Bullis has not since acquired good and sufficient title to the land described in the mortgage.

These findings have ample support in the evidence ; but the court at Special Term dismissed the complaint ; holding that a specific performance could not be decreed, because there was no proof as to what lands were owned or controlled by the defendants Bullis and Barse, except the lands described in the mortgage.   Upon appeal to the General Term, that court agreed with the trial court that specific performance of the contracts could not be decreed ; but held that the damages sustained by the plaintiff might be recovered in such an action, where it appeared that though he was entitled to equitable relief, yet it would be unavailing if granted, because of the defendants' inability to perform.   The General Term assumed, in the absence of any explanation appearing in the record, that the trial court must have dismissed the complaint upon the theory that as equitable relief could not be granted, the plaintiff was not entitled to legal relief ; an assumption which, it must be conceded, is the only one permissible upon the case.

The General Term was undoubtedly right in holding as they did. The plaintiff has set forth in his complaint all the facts constituting a cause of action for specific performance and, upon it appearing that that relief could not be granted, he had at least the right to a new trial wherein he might establish his claim for the damages sustained by a breach of the covenants and agreements relied upon. (*Sternberger* v. *McGovern*, 56 N.Y. 12; *Margraf* v. *Muir*, 57 N. Y. at p. 159.) The trial court might have retained the cause, to grant such legal relief as might be just. (*Cuff* v. *Dorland*, 55 Barb. 481.)

The situation of the case is somewhat singular. The defendants Bullis and Barse have, apparently, gone back to take the new trial awarded them below; but the railroad company, for some reason which does not appear, has elected to appeal to this court; although its natural course would seem to have been to take the new trial, in conjunction with the other defendants. Not having done so, we are brought to consider the plaintiff's relations to the defendant railroad company and his right to maintain this action. It appears, and it is so found, that, prior to the commencement of this action, the plaintiff, on behalf of himself and of all bondholders similarly situated, had applied to his trustee, the defendant, the Central Trust Company, and had requested it, for the protection of the bondholders, to institute this suit and that the trust company had refused to bring this action, or any other suit, for such purpose. In view of this attitude of the trustee I do not think that there is any doubt but that the plaintiff, as a bondholder of the railroad company, had the right to bring and to maintain the action. If this were not permitted in such cases, bondholders would be wholly without protection. Although the mortgage and its agreements are made to and with the Central Trust Company, as trustee, yet the promise of the railroad company is for the payment of money to the holder of its bonds, and it was to furnish security for the performance of that promise that the mortgage instrument was executed and delivered. The bondholders are the beneficiaries of the mortgage, or deed of trust, and that

instrument contains, in effect, a contract made for their bene-
fit through a trustee as a convenient intermediary. It is upon
that principle that such an action as this is permitted. (*Beve-
ridge* v. *N. Y. El. R. R. Co.*, 112 N.Y. 1, 26.) Whatever rights
were vested in the trustee through the mortgage instrument,
as against the mortgagors, inured to the benefit of the bond-
holder as the beneficiary, and are enforceable by him, in the
case of refusal or neglect on the part of his trustee to act for
him upon his making the proper request.

Although the action was intended to compel the perform-
ance by Bullis and Barse of agreements relating to the extent
and quality of the lands, which were to constitute part of the
security for the payment of the bonds issued by the railroad
company, it was not only proper, but necessary, that the rail-
road corporation should be joined as a defendant. The sub-
ject-matter of the suit related to a contract of the railroad
company ; namely, that which was in the deed of trust con-
cerning the conveyance of lands to the trustee, and the com-
pany was, obviously, materially interested in, and would be
affected by, the result of a suit, whose object was to cause that
security to be furnished which it was contemplated and agreed
the bondholders should have. No decree granting relief in
the action would be complete, unless it operated upon the
mortgagor, as well as the other parties who are alleged to have
become obligated with it.

The theory of the complaint and the tendency of the proof
upon the trial were that a fraudulent scheme was devised by
Bullis and Barse ; having for its object the consolidation of
certain railroad properties, owned and controlled by them, and
the issuance of a large number of bonds by the consolidated
company, which should be placed with the public at par
through the co-operation of Newcombe & Co., whose assist-
ance to the scheme, in the negotiation of the bonds, should be
gained by representations and agreements of such a nature, as
to the timber tracts to be furnished as additional security
under the mortgage, that the bonds would appear to be
attractive and salable securities. We are not called upon, at

the present time, to pass upon the liability of Bullis and Barse for the parts they have played in the development and consummation of this scheme, inasmuch as they have gone back to a new trial; but, on the face of this record, that the evidence amply warranted the findings by the trial court is not to be denied, and it would have justified the granting of relief to the plaintiff had the case been in a shape to make that possible. If that be true as to the defendants Bullis and Barse, then this appellant, the railroad company, must be bound by the findings as to the nature and extent of the security to be given to the holders of its bonds. That is enough for the purpose of this appeal, and it is unnecessary to discuss other questions, which are argued and which bear upon the right of the plaintiff to maintain the action as against Bullis and Barse. They are not here, and, therefore, if those questions have any gravity, they must be dealt with at another time and in the light of such evidence as may be adduced; but that a judgment against the railroad company is fully warranted by the evidence, needs no extended discussion. The appellant contends that, upon the record, it was innocent of any acts for which the plaintiff could maintain the action against it. In that contention I am unable to agree. For reasons that have been before stated, the railroad company was a proper and necessary party defendant. Its agreements in the mortgage, or deed of trust, with respect to the security to be furnished in addition to its properties and franchises, were made jointly with others. It was formed by the consolidation of three railroad companies in New York and Pennsylvania, whose capital stock was owned by Bullis and Barse, and in issuing the bonds agreed upon and in executing and delivering the mortgage for their security, it was an instrumentality of those parties. It is no valid objection to this action, as against the railroad company, that the plaintiff has a remedy by way of a foreclosure of the mortgage securing his bonds, if they are not paid according to their terms. When this action was brought, there had been no default in

49

the payment of interest on the bonds; but when it appeared that the underlying security for the payment of the bonds had not been furnished as agreed, the trustee was entitled, or, in the event of its refusal to do so, the bondholders were entitled, upon the plainest principles of equity, to ask that the obligor in the bond and the other parties, who are alleged to have made themselves jointly liable with it with respect to the security to be mortgaged for the payment of the bonds, be compelled to perform what they ought to have done, and if performance, for any reason, may not be decreed, that the court should award such relief against them as upon the facts, it should deem the plaintiff to be entitled to.

I see no reason for reversing the order of the General Term, and, therefore, I advise its affirmance and, under the stipulation given by the appellant, that judgment absolute should be ordered against it, with costs.

All concur.

Order affirmed.