### ROHDE v. HESELDEN.

(Supreme Court, Equity Term, Lewis County.  September, 1910.)

1. BROKERS (§ 103*)—EXCESS OF AUTHORITY—RATIFICATION.

A broker employed procured a purchaser who contracted to purchase for a specified sum, $200 cash, but who executed a note for $200 due in 30 days. The owner, with knowledge of the facts and of the recital in the contract of the receipt of $200, signed the contract. The purchaser within the 30 days paid the note to the broker, but the owner when tendered the money for the first time complained that the contract had been broken and refused to proceed further. *Held,* that the owner waived the express terms as to payment of the $200 cash, and he could not justify his refusal to carry out the contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 147; Dec. Dig. § 103.*]

2. SPECIFIC PERFORMANCE (§ 128*)—CONTRACTS ENFORCEABLE—DAMAGES.

Where it is doubtful if a vendor is able to perform his contract, and justice will best be served by awarding judgment to the purchaser for the money paid with interest and damages suffered by the vendor's refusal to perform, the court in its discretion will refuse to decree specific performance and will render judgment for the money paid and the damages.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 412–419; Dec. Dig. § 128.*]

Action by Frank Rohde against Charles Heselden. Judgment for plaintiff.

C. S. Mereness, Jr. (C. S. Mereness, of counsel), for plaintiff.
Reilly & Sullivan, for defendant.

MERRELL, J. This is an action for the specific performance of a contract entered into between the parties for the sale of real estate, to recover back the sum of $200 paid by plaintiff thereon and for damages by reason of defendant's failure to perform.

The contract purports to have been made on August 18, 1909, and was negotiated through one Walter H. Woodworth, a real estate agent, residing at Central Square, Oswego county. The property contracted to be sold was defendant's farm of about 80 acres situated in the town of Clay, Onondaga county, N. Y., together with 10 cows and a quantity of hay and some little personal property. The defendant had on July 8, 1909, some weeks prior to the making of the contract between the parties, employed Woodworth to effect a sale of his said farm. This employment of the agent, Woodworth, was by a

---

written instrument signed by defendant giving the agent the exclusive sale of the premises for a sum not less than $4,000.

[1] By the terms of the contract the purchase price, $4,300, was to be paid as follows: $200 cash down, the receipt whereof was acknowledged in the contract itself; $500 November 1, 1909; and the balance in payments of $100 or more each year.

The dispute between the parties arises over the first payment of $200, which under the terms of the contract writing was to be a cash payment. The contract was signed first by the purchaser, Rohde, on August 18, 1909. At the time of signing, it appears that Rohde did not have the money to make the cash payment of $200, and gave his promissory note for that amount with one Edwin Guyette as an accommodation maker, payable 30 days from date to the order of the defendant at the agent Woodworth's office at Central Square.

Woodworth testifies that, having obtained Rohde's signature to the contract and the latter's note, he went to the farm of the defendant and told him that he had effected a sale of the premises, but that he had been compelled to take Rohde's 30-day note for the first cash payment of $200, with a signer, and that the defendant expressed his satisfaction with such arrangement. Heselden denies that he consented to the taking of the 30-day note in lieu of the cash payment, but admits that Woodworth did inform him that he had taken a note for the $200 which defendant says Woodworth told him would be paid by the 1st of September following. Heselden says that, when so informed by Woodworth, he (defendant) said it would be all right if the note was paid by September 1st. The note was in fact given on August 18th and was payable 30 days after its date. It was in fact paid to Woodworth on September 11, 1909.

It would therefore appear that Heselden waived the express provision of the contract that the $200 should be paid in cash at the time of executing the contract. It is quite significant that Heselden, who is a man of intelligence, signed and delivered the contract without requiring the payment of the $200 cash down, and does not seem to have spoken either by way of demanding payment or recalling his contract until Woodworth sought to turn over to him the $200 shortly after the note was paid. Then for the first time he complains that the contract had been broken and refused to proceed further in its performance. Shortly before the 1st of November, when the $500 was to be paid, defendant informed the plaintiff that he would not perform nor accept the further payment.

Another matter of some significance is the provision contained in the contract as to the $200 payment. The contract was drawn by Woodworth, the agent, and after specifying that, of the purchase price, $200 was to be paid cash down, the following significant words appear, "receipt of which is hereby acknowledged." Of course, a receipt is always open to explanation; but the acknowledgment of receipt of the cash payment is rather significant, taking into consideration the fact that, when Heselden signed the contract, he had been informed that a note must for some time at least take the place of the specified payment of $200 "cash down." I think the circumstances corroborate the agent Woodworth in his testimony as to the transac-

tion. The defendant insists that as the note was never delivered to him it could not have constituted payment. In answer to that position, Woodworth must be regarded as Heselden's agent. He had months before invested him with authority to negotiate the sale, and the delivery of the note and its subsequent payment to his agent, Woodworth, must be regarded as binding upon defendant.

I am therefore compelled to decide that the defendant waived the express terms of the contract as to the payment of the $200 in cash, and consented to and did receive the 30-day note in lien thereof, and that he was not justified in his refusal to accept the $500 payable November 1, 1909, nor in refusing to carry out his contract.

The plaintiff is entitled to relief in this action.

[2] Upon the evidence, it is somewhat doubtful if defendant would be able to perform his contract. Indeed, it is discretionary in any case as to whether specific performance will be decreed. Under all the circumstances I think justice will best be served by awarding judgment to the plaintiff that he recover back the $200 paid by him September 11, 1909, with interest to date, together with $200 damages proven upon the trial suffered by plaintiff by reason of defendant's refusal to perform the contract. O'Beirne v. Allegheny, etc., R. R., 151 N. Y. 372, 45 N. E. 873.

Judgment is ordered accordingly, with costs.