Van Voorhis, J.
Defendant Hudson & Manhattan Railroad Company (hereafter referred to as the Railroad Company) appeals from three orders, one of which denies its motion to dismiss the amended and supplemental complaint under rule 106 of the Rules of Civil Practice on the ground that it fails to contain facts sufficient to constitute a cause of action. There is no occasion to discuss the other two orders, of which the first grants a motion by plaintiffs to join an additional bondholder as a party plaintiff, and the other denies a motion by the Railroad Company to dismiss the complaint upon the ground that plaintiffs lack legal capacity to sue.
The Railroad Company’s motion to dismiss for insufficiency is based upon failure of the amended and supplemental complaint to contain statements that alleged conditions precedent in the corporate indenture have been met.
It is a minority bondholders’ action, brought to compel specific performance of covenants in an underlying mortgage indenture undertaken by the Railroad Company to maintain, preserve and keep in full repair, working order and condition the mortgaged tunnels, lines of railroads, terminals, terminal buildings and other property including rolling stock, and to make all needful and proper repairs, renewals, replacements, betterments and improvements, including those occasioned by obsolescence and depreciation, so that the traffic and business of the railroad shall at all times be conducted with safety and expedition. Serious default in compliance with these covenants is alleged, based on findings by three engineering firms employed by the Railroad Company to examine and report, the latest of which was J. G. White Engineering Corporation. The latter’s report estimated that $1,652,448 was required to be spent in order to provide proper maintenance, replacements and repairs particularly to the Railroad Company’s signal system and car repair shops, and that considerably more than this sum is required to make needed replacements in the rolling stock. Instead of using available funds to comply with these covenants, plaintiffs allege that the Railroad Company has been purchasing junior bonds, to the depletion of its reserve funds which could be used for the above-mentioned purposes.
The clauses in the indenture which the Railroad Company contends impose conditions rendering plaintiffs ’ pleading insufficient in law, are Article Sixth defining “ events of default ”, and especially subdivision (5) of section 1 thereof describing a contingency in which the matters alleged in this complaint would fall, in the words, if “ default shall be made in the due *734 observance or performance of any other covenant or condition herein, or in any bond issued hereunder, required to be kept or performed by the Company, and any such default shall have continued for a period of three months after written notice to said Company thereof from the Trustee or from the holders of five per cent in the amount of the bonds issued hereunder and then outstanding and section 9 of Article Seventh, providing that no bondholder shall have the right to institute suit, not only for foreclosure, but also “ for .any other remedy hereunder ” unless holders of 25% in amount of bonds outstanding shall have made written request upon the trustee so to proceed, and shall have offered to the trustee adequate security and indemnity against costs, expenses and liabilities to be incurred as a result of commencing such an action. The latter section states that such notification, request and offer of indemnity are declared, “ at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this indenture and to any action or cause of action for foreclosure or for the appointment of a receiver, or for any other remedy hereunder ”. Plaintiffs’ bondholdings are less than 5% in amount of this issue of bonds outstanding.
It seems clear that these provisions of Article Seventh, entitled “ Concerning the Trustee ”, are intended to operate for the benefit not of the Railroad Company but of all of the bondholders acting through the trustee, so as to restrain actions in the bondholders’ individual rights that are brought by less than 25% in amount, unless the trustee approves. In other words, as is sometimes provided as a condition to the collection of principal or interest after default, or in other situations, .the judgment of the trustee concerning whether to resort to the courts is controlling upon all of the bondholders, unless a large and specified proportion of them think otherwise and elect to proceed on their own. This appears to be the principle underlying the numerous decisions upon this subject, such as Greene v. New York United Hotels (236 App. Div. 647, affd. 261 N. Y. 698); Relmar Holding Co. v. Paramount Publix Corp. (147 Misc. 824, affd. 237 App. Div. 870); Levy v. Paramount Publix Corp. (149 Misc. 129, affd. 241 App. Div. 711, affd. 265 N. Y. 629); Allan v. Moline Plow Co. (14 F. 2d 912), and Batchelder v. Council Grove Water Co. (131 N. Y. 42).
All of those cases, and others like them, presuppose a trustee competent to act, and exercising its judgment in good faith respecting what is best for the bondholders as a whole concerning the matter in issue. If a trustee under such an indenture *735 acts in bad faith, or, abdicating its function with respect to the point in question, declines to act at all, bondholders for themselves and others similarly situated may bring a derivative action in the right of the trustee, rather than in their own individual rights as bondholders. In that event they are not subject to the limitations of Article Seventh of the Indenture, which are not imposed on the trustee or on bondholders acting in the status of the trustee. This subject was considered lucidly, and the same result reached, by Justice Walter in Birn v. Childs Co. (37 N. Y. S. 2d 689, 696). He said: “ That the restrictive or no-action clause does not operate, under such circumstances, to prevent a court of equity from granting relief at the suit of a single holder was in effect held in Ettlinger v. Persian Rug & Carpet Co., 142 N. Y. 189, 36 N. E. 1055, 40 Am. St. Rep. 587, and O’Beirne v. Allegheny & Kinzua R. R. Co., 151 N. Y. 372, 383, 45 N. E. 873.” If appellant’s contention were correct, that the limitations of Article Seventh control derivative bondholders’ actions, and not merely suits brought in their individual rights, there would have been no occasion for the enactment of a statute (General Corporation Law, § 61-b) to control a similar situation in a derivative action by a stockholder; it could have been done by appropriate language in the certificate of incorporation.
The applicability of the cases last cited appears from the unusual circumstance in this case that the trustee has taken no position adverse to that of plaintiff bondholders, it has expressly declined to ask for dismissal of the complaint, but on the contrary has urged the granting of" the relief sought by plaintiffs provided that it be considered by the court to be in the interest of this issue of bonds. That, in effect, is its position as alleged in the fortieth paragraph of the amended and supplemental complaint, which the trustee admits in the nineteenth paragraph of its answer to said pleading to be substantially correct. This imports either that the trustee, a party to this action, joins with plaintiffs in its prosecution, or that it has renounced the fiduciary .responsibility incumbent upon it to decide that the action ought not to be prosecuted if the bondholders’ interest would best be served by its dismissal or discontinuance. Although different in other respects, the situation is not unlike that presented in Ettlinger v. Persian Rug & Carpet Co. (142 N. Y. 189, supra), where one bondholder was permitted to sue in a derivative capacity for the reason that the trustee had left the country, was living abroad and had become insane. In the instant case the trustee has renounced *736 its duty to make a decision on an important question concerning what is best for the bondholders. It matters little to the point at hand whether the inability of the trustee to make up its mind is self-created, or comes from misfortune beyond its control. In either instance, a bondholder may sue in behalf of the trustee to protect rights the enforcement of which is ordinarily confided to its judgment, but which can become the subject of a derivative action if the trustee is unable to form a judgment from whatever cause. The failure to allege a request by 25% of the bondholders and an offer to give security is therefore not fatal, especially where it is impossible to locate them as this complaint alleges.
The question remains whether under Article Sixth there has been any event of default which could put the court in motion. The definition of events of default is for the benefit of the Eailroad Company, unlike the invoked provisions of Article Seventh, and subdivision (b) of section 3 of Article Sixth is specific in providing that only in case of. one or more events of default as defined in that article, may the trustee proceed to protect and enforce its rights and the rights of bondholders “ for the specific performance of any covenant or agreement contained herein ’ \ If no event of default has occurred by reason whereof the trustee could maintain this action, it follows that bondholders standing in its shoes cannot sue for the same relief. The limitation that 5% of the bondholders shall concur in such notice does not apply if it is given by or in behalf of the trustee.
We have concluded that this objection is likewise not fatal to this complaint. It alleges that the trustee notified the Bail-road Company several years ago that plaintiff committee had demanded that these covenants in the indenture be specifically performed. It is true that the trustee did not state, in so many words, that it indorsed this demand, but in its answer to the original complaint, verified October 25, 1949, the trustee expressly alleged that it refrained from demanding that the complaint be dismissed, and that it desired to continue as a party to the action “ in order that it may bé in a position to take such a,ction, if any, as may be desirable in order to protect the interest ” of its bondholders. This, in effect, coupled with the allegations of the complaint regarding the trustee’s position, informed the Eailroad Company that the trustee had indorsed the bondholders ’ demand or else abdicated its function in this matter, and was taking the same position which it con- *737 tinned to take by its allegations and admissions in its answer to the amended and supplemental complaint that have been mentioned above. In other words, the Railroad Company was notified more than three months prior to its making the present motion to dismiss the amended and supplemental complaint as insufficient in law, that the trustee was either supporting plaintiffs’ contention or elected to take no position with respect to the subject matter. In an equitable action the court regards the factual situation as of the time of the decree rather than when the action is commenced, and therefore occurrences which are stated in the pleadings may be considered' on this motion notwithstanding that they took place after the service of the summons. The significance for the point at hand, is that the pleadings show that the Railroad Company had notice, through being informed of the demand by the protective committee and (by the original answer) of the trustee’s concurrence in said demand or refusal to charge itself with responsibility, more than eight months before the Railroad Company served its notice of the instant motion to dismiss the amended and supplemental complaint as insufficient in law. That, in our judgment, was enough to inform the Railroad Company that a default in the performance of these covenants had occurred, as Article Sixth requires, more than three months before the sufficiency of this pleading was challenged. On the basis of the pleadings, which are always before the court, it was therefore ‘‘ an event of default ” as defined in the trust indenture.
The orders appealed from should be affirmed, with $20 costs and printing disbursements.
Callahan and Shientag, JJ., concur; Peck, P. J., and Glennon, J., dissent in part and vote to reverse and grant defendant-appellant’s motions to dismiss the complaint under rules 106 and 107 of the Rules of Civil Practice.
Orders affirmed, with $20 costs and disbursements to the respondents. [See 278 App. Div. 696.]