### In re BIG MEADOWS GAS CO.

#### (District Court, W. D. Pennsylvania. February 25, 1902.)

**1. BANKRUPTCY—PROVABLE CLAIMS—UNLIQUIDATED DEMANDS.**

Where the claim of a petitioning creditor, although made up of different elements, is based upon a single written instrument and the nonperformance of its covenants by the alleged bankrupt, it must be treated under the bankruptcy act as a single claim; and, where some of the elements are confessedly unliquidated, the claim as a whole is an unliquidated one, and subject to the limitations incident to a claim of that character.

**2. SAME—PETITIONING CREDITORS—QUALIFICATION.**

Under Bankr. Act 1898, § 63b, providing that "unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate," holders of unliquidated claims do not become "creditors" until their claims have been liquidated as therein provided; and hence such claimants, whose claims are not admitted, but disputed, cannot maintain a petition to have the alleged debtor adjudged an involuntary bankrupt.

In Bankruptcy. Sur certificate of W. R. Blair, referee, sitting as special master.

Geo. R. Wallace and Weil & Thorp, for petitioning creditors.
Edwin S. Craig, for alleged bankrupt.
Winternitz & McConahay, for Union Trust Co.

BUFFINGTON, District Judge. The scope of the certificate has, by consent of counsel, been enlarged so as to raise the question whether the petitioning creditors have standing as such. Their claim is based upon a certain written contract for the sale of gas, and it is assumed, for present purposes, that the rights of the parties of the first part to said contract have been assigned to the petitioning creditors, and the obligations of the parties of the second part assumed by the Big Meadows Gas Company. The answer of that company, amongst other things, denied the company was "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits"; averred that, as unliquidated claimants, the petitioners had no standing to file an involuntary petition against it; and alleged the petitioners were, under the contract, indebted to it in the sum of $60,000. This answer was adopted by the Union Trust Company, a judgment creditor of the Big Meadows Gas Company. Thereupon the court, without prejudice to the right of the Big Meadows Gas Company to question its jurisdiction, appointed the referee a special master to take the testimony, and report to the court findings of fact and law. On the hearing, a question arose as to the production by the Big Meadows Gas

Company of certain of its books. That question was certified to the court for its opinion, and thereupon, by consent of counsel, the scope of the certificate was widened, as noted, so as to raise the question of the standing of the petitioning creditors as such to file this petition. Their claim consists of several elements, but they are all based upon a single contract, and alleged nonperformance thereof. The first element is for $7,300 for gas furnished and contracted to be paid for as follows: The second party "will, once each month, pay over to said first parties the full equal one-half of all sums and amounts received from the sale of gas, without any reduction or rebates for any cause whatever." The second element is for unliquidated damages averred as follows: "A claim for damages for the breach of said contract by said corporation in failing to take and sell gas continually and without intermission as provided in said contract, and in failing to buy and take gas from the leases mentioned therein so long as said leases continue and gas is found in paying quantities, and in otherwise violating said contract and failing to perform the covenants thereof." In that regard the contract provides as follows: "Second party agrees to operate said line, and to conduct and sell gas continually and without intermission, and in lieu thereof to pay first parties all reasonable damages for his neglect so to do. Second party agrees to buy and take the gas from said leases so long as said leases continue and gas is found in paying quantities, and that if he shall conduct gas from other territory through said line he will pay over to said first party the full equal one-half of the same realized from the sale thereof, the same as if the gas was produced on said leases, and was delivered to said second party by first party at the wells of said leases." The answer in that regard was that the petitioners were indebted to the gas company, under the contract, in "not less than $60,000.00 for labor, materials, and money paid out for and on behalf of the petitioners in and about the gas wells, operating the same, and the production of gas, and for damages in not furnishing gas in accordance with the contract." It will thus be seen that the petitioners' claim, while made up of several elements, is in fact one based upon a written instrument and nonperformance of its provisions. Now, where one has a claim based upon a written instrument, the bankrupt law treats it as a single claim, provides for its proof as such, and directs filing of the written instrument with the claim. Section 57, subd. "b," says: "Whenever a claim is founded on an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim." The petitioners then having a single claim, based on the elements noted, it is manifest that the confessedly unliquidated character of some of the elements make the claim, as a whole, an unliquidated one, and subject it as such to the limitations and statutory provisions incident to a claim of that kind. How and when is such claim liquidated and proved? Is liquidation its proof, is proof its liquidation, or are the two separate steps? The statute settles this. Subdivision "a" of section 63 defines, under five clauses, claims that may be proved; while subdivision "b" provides for the precedent liquidation, and thereafter for the proof, of unliquidated claims. The provision is: "Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct and

may thereafter be proved and allowed against his estate." It will thus be seen the demand is proved after liquidation, and that prior thereto an application is to be made to the court for direction as to the manner of such liquidation. After careful and deliberate consideration of the question here involved, we have reached the conclusion that the unliquidated demand herein made only becomes a provable debt after it has been judicially ascertained and liquidated in the statutory method set forth. Such construction is in accord with other provisions of the act. The provisions requiring petitioning creditors should have claims aggregating $500 in excess of all securities evidence that congress felt there should be definite, ascertained claims, and that, too, in excess of all securities, as a foundation on which to base a petition to adjudicate one a bankrupt. Where a claim against another has not been judicially ascertained, and where its validity and certainty are evidenced by no paper, acknowledgment, or other admission of the debtor, it would offend our sense of right to allow such self-asserted claim to constitute sufficient ground for harassing another with a petition in bankruptcy. It will readily be seen that an averred but unfounded claim might be made an effective weapon to enforce an unjust demand, or even to bankrupt a struggling, but solvent, debtor. Of course, no such consequence would result from the case in hand. The property of the company has been sold at sheriff's sale, but the question raised is jurisdictional. It is therefore better for all parties that we should meet such question at the threshold rather than allow the case to proceed only to find at the end the court was without jurisdiction. Being of opinion the petitioners have no standing as petitioning creditors, an order may be prepared dismissing the petition. Our construction of the act finds support in Beers v. Hanlin, 3 Am. Bankr. R. 745, 99 Fed. 695; In re Morales, 5 Am. Bankr. R. 425, 105 Fed. 761; In re Henry Ulfelder Clothing Co., 3 Am. Bankr. R. 432, 99 Fed. 409; In re Brinckman, 4 Am. Bankr. R. 551, 103 Fed. 65; In re Silverman Bros., 4 Am. Bankr. R. 88, 101 Fed. 219; In re Peny-Van Colliery Co., 6 Ch. Div. 477. This view of the case renders it needless for us to pass on the question whether the Big Meadows Gas Company is "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits."