## In re ENNIS & STOPPANI.

### Ex parte ROCHE.

(District Court, S. D. New York. June 24, 1909.)

1. BANKRUPTCY (§ 423*)—DEBTS DISCHARGED—LIABILITY FOR CONVERSION.

Where brokers by fraud induced a customer to authorize them to purchase stocks for him and to deposit margins therefor, and afterwards converted such stocks and became bankrupt, the customer had his option to sue for rescission of the contract on the ground of fraud, or for the conversion; and when he did the latter he waived the fraud and affirmed the contract, and has no standing to claim that the bankrupt's liability was one for obtaining property by false pretenses, and not affected by the discharge, under Bankr. Act July 1, 1898, c. 541, § 17a (2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), as amendetd by (Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 423.*]

2. BANKRUPTCY (§ 424*)—DEBTS DISCHARGED—LIABILITY FOR CONVERSION—"WILLFUL AND MALICIOUS INJURY TO PERSON OR PROPERTY."

A conversion of property is not a "willful and malicious injury to person or property," within the meaning of Bankr. Act July 7, 1898, c. 541, § 17a (2), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026), which excepts liabilities for such injuries from debts from which a bankrupt is released by a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787, 818; Dec. Dig. § 424.*]

3. BANKRUPTCY (§ 426*)—DEBTS DISCHARGED—DEBTS CREATED BY FRAUD.

In Bankr. Act July 1, 1898, c. 541, § 17a, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026), which provides that a discharge shall release a bankrupt from all of his provable debts, except such as "(4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity," the phrase "while acting as an officer in a fiduciary capacity" qualifies all the preceding portion of the clause.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787-807; Dec. Dig. § 426.*]

4. BANKRUPTCY (§ 391*)—ACTIONS AGAINST BANKRUPT—STAY.

An action at law for the conversion by brokers of stocks owned by plaintiff, but held by defendants as pledgees, although it is alleged that they induced plaintiff to purchase such stocks by fraud, is not one to recover a debt created by defendants' "fraud, embezzlement, misappropriation or defalcation while acting in a fiduciary capacity," within Bankr. Act July 1, 1898, c. 541, § 17a (4), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), as amended by Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 (U. S. Comp. St. Supp. 1907, p. 1026), and on the bankruptcy of defendants such action may be stayed by the court of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 391.*]

5. BANKRUPTCY (§ 391*)—ACTIONS AGAINST BANKRUPT—STAY.

A pending action against bankrupts on a dischargeable debt, in which they had been arrested and given bail more than four months prior to their bankruptcy, may be permitted by the court of bankruptcy to proceed to judgment for the purpose of enabling the plaintiff therein to enforce his demand against the surety in the undertaking, in case it is in form a security for payment of the judgment.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 391.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy.   On motion to vacate stay.

This is a motion to vacate the stay of the petitioner, Roche, against pro-
ceeding to the entry of judgment in an action brought by him against
the bankrupts in the Supreme Court of the state of New York.   The action
was for the conversion of the petitioner's stock, which had been purchased
by the brokers for him and had been held by them as pledgees for the re-
payment of part of the purchase price.   The allegations of conversion are
as follows: "The defendants converted said stocks to their own use and
benefit in fraud of the rights of the plaintiff."   Again: "By reason of the
said illegal and fraudulent sale of said shares of stock by the defendants
herein as aforesaid, and by reason of the illegal and fraudulent acts of
the defendants hereinabove set forth, the plaintiff has suffered damages."
After serving the complaint against the defendants, the petitioner caused
their arrest in the state courts and compelled them to give bail to answer
the judgment.   This bail was procured from a surety company, to whom
the bankrupts gave indemnity; but the arrest, the bail, and the indemnity
all took place more than four months prior to the bankruptcy.   The trus-
tee opposes the motion, so that in the interests of the estate he may recover
the indemnity given the surety company.   The petitioner now claims that
he was exploited by the bankrupts from the outset; that he was induced
to buy the shares of stock by a person secretly in the employ of the bank-
rupts, whose business it was to induce customers to trade with them, to
whom he gave a power of attorney to act as he saw fit.   He likewise says
that $5,000 additional margin for his purchase was procured from him by
the bankrupts through fraud.   The question arises whether the claim is
dischargeable in bankruptcy.

Davison & Underhill, for petitioner.

HAND, District Judge (after stating the facts as above).   Roche
had two possible remedies open against the bankrupt.   He could either
sue them for willful conversion of his stock (which he did), or he
could sue to rescind the whole contract for fraud, first, because of the
imposition originally practiced on him by the bankrupts through their
fraudulent agent, and, second, because of the imposition by which they
obtained the additional margin.   Had he sued to rescind the contract,
he might possibly have some color to claim that under the second sub-
division of section 17 of Act July 1, 1898, c. 541, 30 Stat. 550 (U. S.
Comp. St. 1901, p. 3428), this was a liability for obtaining property
by false pretenses or false representations; but he has not adopted this
course, for he affirmed the sale and sued for the stock which was con-
verted.   As he cannot, therefore, now sue upon the fraud, to succeed
upon this motion Roche must bring his case within the second or
fourth subdivision of section 17.

Prior to 1903 his case would have come squarely within the rule of
Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, and
Tindle v. Birkitt, 205 U. S. 183, 27 Sup. Ct. 493, 51 L. Ed. 762, and
the question is whether the amendment of 1903 changed the law as
there laid down.   That amendment (Act Feb. 5, 1903, c. 487, § 5, 32
Stat. 798 [U. S. Comp. St. Supp. 1907, p. 1026]), so far as here ma-
terial, changed subdivision 2 so that, instead of excepting judgments
for fraud, obtaining property under false pretenses or representations,
or for malicious injuries to person or property, it excepted liabilities
for obtaining property under false pretenses or representations or will-
ful injuries to person or property.   As I have already shown, Roche

cannot claim here for fraud, because he has affirmed his purchase by suing for conversion. It is true that under Bullis v. O'Beirne, 195 U. S. 606, 25 Sup. Ct. 118, 49 L. Ed. 340, the form of the complaint is not conclusive; but the trouble here is that the action is not brought for fraud at all, but for conversion of a title obtained through 'the very fraud on which the victim now seeks to rely. Having, with full knowledge of the fraud, sued for the value of the stock, he can no longer as matter of law rely upon the fraud. He is therefore relegated to the second part of subdivision 2, which excepts liabilities for malicious injury to property. The only injury to his property rights considered in its conversion, and if that be a "malicious injury" to his property, so is every fraud or embezzlement, and the earlier part of subdivision 2, as well as the whole of subdivision 4, is merely elaborate tautology. This cannot be the correct meaning of the words. Injury to person and property means causing damage to the subject-matter of the rights, not depriving the owner of them. It is so used generally in the law, and Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754, is no exception to the rule, because the theory was, not that the husband is deprived of his rights in his wife, but that her seduction is an actual assault upon her person.

No doubt it is hard to think of any claim which would at once be provable and also a liability for such injuries, unless it be a judgment for them. Still it may be that the clause might cover such claims as at once arose from injury to the subject-matter of property and resulted in such profit to the wrongdoer as permitted an action on the common counts. Be that as it may, I cannot interpret those words in a way so entirely at variance with their traditional meaning as to cover willful conversion, merely because I am uncertain whether they really cover any other cases than they did prior to 1903. Besides, the facts in Re Adler, 152 Fed. 422, 81 C. C. A. 564, although not the reasoning, make that case an authority to the contrary, because, though the money there appropriated by the factor may have been the principal's only in equity, it would be an unreasonable distinction to say that there was an "injury to property" only when the wrongdoer converted that to which the victim had legal title. Kavanaugh v. McIntyre, 128 App. Div. 722, 112 N. Y. Supp. 987, undoubtedly bears out the petitioner here, there being no valid distinction between that case and this; but it is not an authority binding upon me, and I regret that I cannot assent to its reasoning. Moreover, it is contradicted by Maxwell v. Martin, 130 App. Div. 80, 114 N. Y. Supp. 349, in the First department, a court of equal authority. I cannot, therefore, agree that the case comes within either of the clauses of the second subdivision.

Coming now to the fourth subdivision, the question is whether the amendment of 1903 has had the much-to-be-desired effect of attributing the words "in a fiduciary capacity" to "defalcation" alone. The answer to this, at least upon authority, is to be again found in Re Adler, 152 Fed. 422, 81 C. C. A. 564. As res integra I should have thought it possible that the omission of the word "fraud" in subdivision 2 might have indicated that after 1903 the same word in subdivision 4 was meant to cover all frauds, since the contrary seems to involve the

result that now, judgments for fraud not committed in a technically fiduciary capacity are discharged where formerly they were not, a result the direct contrary of the obvious general purpose of the amendment; but it may be that "false pretenses or representations" were thought to cover all the cases which were formerly covered by those words and by the word "fraud," even though such a construction does render tautologous the word "fraud" in subdivision 4. However that may be, In re Adler, supra, concludes me from holding that the words "embezzlement" or "misappropriation" may be construed independently of the clause "in a fiduciary capacity," and I must follow that case.

While, therefore, I cannot disguise my regret that the bankrupts should be discharged from a claim arising out of a deliberate conversion of this property, accompanied by very shameful fraud, which involved the greatest moral turpitude, yet, as I understand the authorities, I cannot see that the amendment of 1903 has changed the rule of Crawford v. Burke. Though I cannot wholly vacate the stay, I can, however, permit the petitioner to enter his judgment against the bankrupts, and to do so much else as may be necessary to perfect any rights he may have under the undertaking, if any. The undertaking was taken out more than four months before the petition was filed; and, assuming that the indemnity given the surety created a lien under section 67c or 67f, which it is not necessary to decide, such a lien is not invalid. If the petitioner can enforce the undertaking, I will aid him to do so.

Let an order be entered, therefore, vacating the stay so far as to permit the entry of judgment against the bankrupts, and thereafter to take such proceedings against the sureties as the claimant may be advised. If the undertaking only provides that the bankrupts shall answer a body execution, I shall not be able to aid the claimant, as I could not permit the bankrupts to be arrested for a claim which will be discharged; but, if the undertaking be in form a security for the payment of the judgment, I may be able to allow the claimant to fulfill the conditions of the undertaking, if they involve only such matters as property execution and the like. These are questions which I can decide upon the settlement of the order, when I can learn the form of the undertaking and what should be allowed.

Settle such order upon one day's notice on any morning at 10 a. m. at my chambers.