## In re HOWARD.

(District Court, N. D. West Virginia. January 7, 1913.)

1. BANKRUPTCY (§ 417*)—DISCHARGE—APPLICATION TO VACATE—LIMITATIONS.
Bankruptcy Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), provides that the judge may, on the application of the parties in interest who have not been guilty of undue laches, filed at any time within one year after the discharge shall have been granted, revoke it upon a trial if it shall appear that the discharge was obtained through the bankrupt's fraud, and that the knowledge of the fraud has come to the petitioner since the granting of the discharge, and that the actual facts did not warrant the same. *Held,* that the limitations prescribed by such section are directly on the court's power, as distinguished from the cause of action, and hence if they are not complied with the court has no power to annul a discharge.
[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

2. BANKRUPTCY (§ 417*)—DISCHARGE—VACATION—LACHES.
Bankruptcy Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), provides that parties in interest who have not been guilty of undue laches may, at any time within a year after a discharge, apply to revoke the same. Petitioners, applying to revoke a bankrupt's discharge, were both parties to the proceedings, and neither alleged that they did not receive the notice of the application for the discharge showing the date when the hearing would be asked thereon, nor did they assail the regular publication of notice of such date. The petition was not filed until two days before the expiration of the year, and the only excuse for delay given was that petitioners did not know of the discharge until long after it had been entered, and that a few days before the expiration of the year they were informed of the alleged fraudulent transfer because of which they sought to have the discharge set aside. Who gave such information or where, how, or under what circumstances it was received, however, was not disclosed. *Held,* that the application did not sufficiently show that petitioners were not guilty of laches, and was therefore insufficient.
[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

3. BANKRUPTCY (§ 417*)—DISCHARGE—REVOCATION—PETITION—AMENDMENT.
Where a petition to revoke a bankrupt's discharge was not filed until two days prior to the expiration of the year limited therefor by Bankruptcy Act July 1, 1898, c. 541, § 15, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), and was insufficient for failure to relieve petitioners from the imputation of laches, they were not entitled to leave to amend after the expiration of the year to cure the defect.
[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 867–871; Dec. Dig. § 417.*]

In Bankruptcy. In the matter of bankruptcy proceedings of John A. Howard. On demurrer to petitions filed by the Empire National Bank and W. C. Handlan to revoke the bankrupt's discharge. Demurrer sustained, and petitions dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
201 F.—37

M. G. Sperry, of Clarksburg, W. Va., for petitioner Empire Nat. Bank.

J. B. Sommerville, of Wheeling, W. Va., for petitioner W. E. Handlan.

Arthur S. Dayton, of Philippi, W. Va., for bankrupt.

DAYTON, District Judge. John A. Howard was adjudicated bankrupt December 13, 1910. On July 27, 1911, discharge was granted him, and these petitions were filed July 25, 1912, seeking the revocation of the same. Demurrers have been entered to each of the petitions, arguments made thereon, briefs filed, and they are now to be determined.

The petitions are substantially alike in their charge based solely "upon information and belief" that said bankrupt, three days before his adjudication in bankruptcy, made a fraudulent agreement with one Landmesser, a broker, and one Bachman, whereby certain bonds were pretended to be sold to Bachman and paid for by him through Landmesser, when in fact they were not sold, but Bachman was paid back his money and the bonds were returned to Howard.

Both petitions allege that petitioners therein did not know of the order of discharge until long after it was granted; that they had no knowledge of the transaction set forth between Howard, Landmesser, and Bachman "until within a few days preceding the filing of this petition." Several grounds of demurrer are alleged, but I deem consideration of one, common to both petitions, to be sufficient. The fifteenth section of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]) provides:

The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted revoke it upon a trial if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge.

Construing this statute in Re Mauzy (D. C.) 163 Fed. 900, I said:

It is to be borne in mind that, under this section, the power of the judge to revoke a discharge is confined and limited. It must be exercised: (a) Upon application of parties in interest; (b) within one year after it has been granted; (c) upon a trial in which it must be shown by petitioners that they have (d) not been guilty of undue laches; (e) That the discharge was obtained through the fraud of the bankrupt; (f) that the knowledge of said fraud has come to the petitioners since the granting of the discharge; and (g) that the actual facts did not warrant the discharge. In each and every one of these particulars the burden of proof is upon the petitioners, and each requirement of the statute is absolutely essential to be proven.

It will be perceived that to revoke a discharge in bankruptcy involves an exercise of judicial discretion and power far more reaching in effect than the suspension for fraud of a statute of limitation barring the recovery of a debt or single demand of a single creditor; further, that it is in direct opposition to the whole spirit and intent of the bankruptcy act. That purpose and intent clearly is to give the bankrupt's creditors his property and to him complete relief from further claims upon him so that he may start over again. His failure may have

been solely because of collateral obligations; he may still have the confidence of those who, after his discharge, are willing to sell him property, extend to him credit, help to start him up again in business. To revoke his discharge not alone affects his interest but also all these new obligations that he has incurred to others upon the security and strength of such discharge. Under these conditions, I am inclined to think that this provision was incorporated in the bankruptcy act more as a check upon what might be the assumption of the courts under equity powers to revoke these discharges and the enforcement of equity's old rule that no limitation runs against fraud.

[1] The limitation here is directly upon the court's power, not upon "the cause of action," as most limitations are. It provides that the judge "may" act, not that he shall; that he may act only within the year, after the lapse of which his power to act at all ceases; that his action within this year must depend not alone upon the fraud of the discharged bankrupt, but also upon the conduct of the petitioning "party in interest"—that is to say, upon the latter's good faith and diligence in bringing the matter to the judge's attention.

[2] In other words, it becomes absolutely necessary for such petitioner, before he can be heard at all, to show that he has not been guilty of laches in bringing forward his complaint. Let us see if these petitions in any way conform to these requirements. They say the petitioners did not know the order of discharge was entered until long after it was entered. By the schedule filed, both were made parties to the proceedings, and neither allege that they did not receive the notice required to be sent by the clerk to all creditors of the application for such discharge and the date when hearing would be asked thereon. They do not assail the regular publication of notice of this date, also as the law requires. In fact, it looks very much as if this allegation means that they overlooked or paid no attention to the legal notice given them in both forms. Then they do not allege that they examined the bankrupt, as they had right to do, to ascertain whether he had made any unlawful transfers, or that they had made investigation of his affairs to see if any fraud had been committed by him. Part of the bonds alleged to have been fraudulently transferred by him to the broker were National Telephone Company bonds. Howard was president of this company; Handlan was manager. Its failure was the cause of Howard's financial downfall. His personal debts were substantially nothing. His indorsements for this company involved him to the extent of hundreds of thousands of dollars. It would seem to have been an easy matter for petitioners to ascertain who held these bonds and to have shown some effort to bring them into court for distribution.

But aside from all that, considered in the light most favorable to these petitioners, all that they say in effect is that, a few days before the expiration of the year, some one gave them information that the fraudulent transfer had been made. Who gave them this information? When, how, and under what circumstances? What reason has the court to know that such information came from a credible source, was not mere idle gossip? It would simply be imposition on all parties

concerned and a travesty upon both the law and justice to establish the rule that at any time within the year—in this case within two days of its expiration—a creditor could file a petition to upset the order of discharge on the ground that some one a few days before had told him that the bankrupt was not entitled to it because of a fraudulent transfer. But it is said such allegations can only be made "upon information and belief." True, and therefore the greater necessity for additional allegations on the part of the petitioner showing how he got the information, from whom, under what circumstances, and that he in good faith has investigated such information to ascertain its verity.

Upon these propositions it seems to me that the three decisions of Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, Hardt v. Heidweyer, 152 U. S. 547, 14 Sup. Ct. 671, 38 L. Ed. 548, and In re Oleson (D. C.) 110 Fed. 796, 7 Am. Bankr. R. 22, are absolutely conclusive. The two first, by the Supreme Court, were based upon proceedings to suspend ordinary state statutes of limitations. In the first (Wood v. Carpenter) the court says:

The discovery of the cause of action, if such it may be termed, is thus set forth: "And the plaintiff further avers that he had no knowledge of the facts so concealed by the defendant until the year A. D. 1872, and a few weeks only before the bringing of this suit." There is nothing further upon the subject.

In this class of cases the plaintiff is held to stringent rules of pleading and evidence, "and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence the discovery might not have been before made." Stearns v. Page, 7 How. 819, 829, 12 L. Ed. 928. "This is necessary to enable the defendant to meet the fraud and the time of its discovery." Moore v. Greene et al., 19 How. 69, 72, 15 L. Ed. 533. The same rules were again laid down in Beaubien v. Beaubien, 23 How. 190, 16 L. Ed. 484, and in Badger v. Badger, 2 Wall. 95, 17 L. Ed. 836.

A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. Carr v. Hilton, 1 Curt. 230, Fed. Cas. No. 2,436.

And again:

There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.

The second case (Hardt v. Heidweyer) fully affirms this ruling of Wood v. Carpenter, and further holds a bill in equity so defective should be dismissed on demurrer, while In re Oleson directly applies the principles set forth in these two cases to petitions filed to revoke bankruptcy discharges.

[3] Finally, petitioners' attorneys suggest that they should be permitted to amend their petitions. I do not think so. If such application to amend had been made before the expiration of the year, I think I could have allowed such amendment; but it was not. At the end of the year fixed by the statute, there was no sufficient petition filed upon which I could grant hearing to revoke this discharge. To allow these petitioners under guise of amendment to file new and possibly

sufficient, possibly insufficient, petitions would be exercising judicial power on my part after, by express enactment, my right to exercise such power had ceased.

It follows that the petitions must be dismissed.