### In re BANCUNITY CORPORATION.

District Court, S. D. New York. December 31, 1929.

596

Henry W. Sykes, of New York City, for petitioning creditors.

Ashley & Foulds, of New York City, for bankrupt.

WOOLSEY, District Judge. The motion for an order adjudicating the Bancunity Corporation a bankrupt is granted.

The petitioning creditors should apply forthwith to the judge sitting in bankruptcy for the appointment of a receiver of the bankrupt.

The only question of general interest here involved is whether the petitioning creditors, having been stockholders, had the right under the Bankruptcy Act of 1898, as amended (11 USCA), to file an involuntary petition against the bankrupt.

That is a question of law to be determined on the facts found by the special master, whose findings of fact, as he had all the witnesses before him, I hereby adopt and approve.

The material facts in regard to the status of the alleged creditors are as follows:

The Bancunity Corporation was incorporated under the laws of New York State on April 28, 1928, by one Louis de Pasquale.

On or about May 7, 1928, the petitioning creditors Trovato, Valente, and Gabarino, and the intervening creditor Blundo—induced by knowingly false representations of Louis de Pasquale, which continued up to the date of the purchase of stock—invested in Class A stock of the Bancunity Corporation in the following amounts: Trovato $2,000; Valente $5,000; Gabarino $5,000, and Blundo, $1,000.

The Class A stock had not any vote in the corporate affairs. The voting power was vested in the Class B stock, of which all that was issued was taken by De Pasquale, who thus became in effect the alter ego of the Bancunity Corporation, whose money he proceeded to use for his own purposes.

■ The petitioning creditors and intervening creditors having become stockholders, De Pasquale proceeded on May 8, 1928, to elect Valente and Trovato directors. At the same meeting Valente was also elected treasurer. Neither of them ever took any part in the management of the corporation, and Valente signed only one check as treasurer. There is therefore no estoppel involved, and they will be dealt with on the same basis as the other stockholders.

De Pasquale, as owner of all Class B stock and as sole voting stockholder, held meetings with himself from time to time during 1928, after signing a waiver of notice.

On December 29, 1928, De Pasquale held such a meeting at which he removed Valente and Trovato as directors and Valente as treasurer, and substituted men of his own choice for them.

That was the last meeting of this grotesque entity so far as the minute book shows.

On February 15, 1929, the Attorney General of New York secured a consent decree in the New York Supreme Court, New York County, in an action under Article 23-A of the General Business Law of the State of New York (Consol. Laws, c. 20) against the Bancunity Corporation, its officers, agents, etc., enjoining them from selling or exchanging the stocks or bonds of the corporation.

Having read the voluminous record of the testimony taken before the special master, I have not any hesitation in saying that his findings on the issues are correct and sustained by the whole record.

I accept, of course, his findings on the credibility of the witnesses, all of whom appeared before him. As to De Pasquale, the special master says: "I find that Louis dePasquale is entirely unscrupulous, dishonest and utterly unworthy of belief."

Prior to filing the involuntary petition in bankruptcy herein, the three stockholders Trovato, Valente, and Gabarino served notice on the corporation of their intention to rescind their purchases of stock on the ground of the fraud above mentioned.

On the hearing before the special master, all three have established their right to rescind for the reason mentioned in their notice, and are now creditors whose claims have been fixed as claims, for money had and received by the bankrupt to their use, in the amounts severally paid by them for their stock. Blundo, who came in as an intervening creditor after the petition was filed, is now on the same basis as the other three.

The sections of the Bankruptcy Act which are involved are:

Section 59b of the act, 11 USCA § 95(b), which reads: "(b) Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to $500 or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

Section 63a(4) of the act, 11 USCA § 103(a), (4), which reads: "Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded * * * upon a contract express or implied."

And section 63b of the act, 11 USCA § 103(b) which reads: "(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate."

Here it is conceded by the bankrupt's attorney that there were less than twelve creditors, hence under section 59b of the Bankruptcy Act a single creditor could file the petition. If, therefore, the claims of Trovato and Valente should be considered as involved in an estoppel because of their official connection with the corporation, in any event Gabarino's single claim would, under section 59b of the Bankruptcy Act, be a sufficient basis for an involuntary proceeding in bankruptcy.

■ Bankruptcy is a statutory jurisdiction involving drastic remedies and the requirements of the jurisdiction must be complied with strictly. Cutler v. Nu-Gold Ring Co., 264 F. 836 (C. C. A. 8th). However, claims in order to be provable and found jurisdiction in involuntary bankruptcy proceedings do not have to be liquidated. F.

598

L. Grant Shoe Co. v. W. M. Laird Co., 212 U. S. 445, 448, 29 S. Ct. 332, 53 L. Ed. 591.

Whilst stockholders as such are not creditors for the purpose of involuntary proceedings in bankruptcy, In re Eureka Anthracite Coal Co. (D. C.) 197 F. 216, it is the settled law in the United States that a defrauded shareholder may rescind after the insolvency of a corporation. MacNamee v. Bankers' Union for Foreign Commerce & Finance, 25 F.(2d) 614, 615, 617 (C. C. A. 2d) and cases there cited.

The question next to be considered is the process by which the defrauded stockholder who desires to rescind should prove his claim.

Rescission usually involves ridding a party of a contract with another and restoring him to the status quo existing before the contract relation was assumed; sometimes it involves, as in this case, a party's ridding himself of a status in which many others may be involved.

To accomplish rescission it is necessary, therefore, always to have a judicial act by a court with equitable powers, or an agreement of rescission between the parties.

Here there was not any agreement, or any decision on the question of rescission before the petition was filed. The notices of intention to rescind served on the Bancunity Corporation did not, in and of themselves, effectuate any change in the status of the petitioning creditors from that of stockholders in the Bancunity Corporation to that of creditors with liquidated claims for the amount they had severally subscribed for their stock.

The notices accompanied by tender of stock were merely appropriate preliminaries to a suit for rescission. An involuntary petition for bankruptcy is a proceeding in which the right to rescind may be shown and a rescission decreed, for bankruptcy proceeds on equitable principles. Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 S. Ct. 1000, 44 L. Ed. 1175.

My decision adopting the recommendations of the special master, and the entry of an appropriate order thereon, is the judicial act by which the relation of the stockholders as such to the bankrupt is rescinded, and their claims established as claims for money had and received.

The authorities are not unanimous as to whether a rescinding stockholder has a provable claim entitling him to file a petition in an involuntary proceeding in bankruptcy.

It is held in Re Harmony Creamery Co.

(D. C.) 18 F.(2d) 609, and semble in Missouri Valley Cattle Loan Co. v. Alexander 276 F. 266, 270 (C. C. A. 8th), that there must be a decree allowing rescission before the creditor has so changed his status as stockholder as to enable him to appear in the new rôle of creditor.

The first of these cases was apparently based on the case of In re Big Meadows Gas Co. (D. C.) 113 F. 974, where Judge Buffington had held that the holders of an unliquidated claim did not become creditors within the meaning of section 63, until their claims were liquidated.

This case, however, was discredited by Justice Holmes in Grant Shoe Co. v. Laird, 212 U. S. 448, 29 S. Ct. 332, 53 L. Ed. 591, where he pointed out that a claim may be provable without being liquidated, and is a good claim to found jurisdiction in involuntary bankruptcy if it comes within the category of claims mentioned in section 63a. It can then be later proved and liquidated in the bankruptcy proceedings, for by section 63b proceedings for liquidating unliquidated claims against the bankrupt are provided. These proceedings may be invoked at the time of filing the petition as well as after adjudication. Cutler v. Nu-Gold Ring Co. (C. C. A.) 264 F. 836, 838.

As Justice Holmes intimates in the case of Grant v. Laird, 212 U. S. 445, 29 S. Ct. 332, 53 L. Ed. 591, there is not any magic in liquidation, for an unjust demand may be made for a liquidated claim as well as for an unliquidated claim.

In Crawford v. Burke, 195 U. S. 176, 186, 193, 25 S. Ct. 9, 49 L. Ed. 147, and Tindle v. Birkett, 205 U. S. 183, 184, 27 S. Ct. 493, 51 L. Ed. 762, a "provable debt," within the meaning of the Bankruptcy Act, §§ 17 and 63a, is stated to mean a claim which is "susceptible of being proved" in the bankruptcy court. Cf. also Central Trust Company v. Chicago Auditorium Assn., 240 U. S. 581, 589, 592, 36 S. Ct. 412, 60 L Ed. 811, L. R. A. 1917B, 580, and Schall v. Camors, 251 U. S. 239, 249, 250, 40 S. Ct. 135, 64 L. Ed. 247.

It is settled by the decision of the Circuit Court of Appeals for this circuit in in MacNamee v. Bankers' Union for Foreign Commerce and Finance, 25 F.(2d) 614, that a stockholder rescinding on the ground that his purchase of stock was procured by fraud may prove his claim in equity under our law.

That claims of this kind are provable in bankruptcy has been held in this district by Judge Thacher, without opinion, In the Matter of the Federal Adding Machine Corpora-

tion, Bankruptcy Docket No. 33,141, which came before him on review of an order by a referee sustaining the proof of a claim for money had and received based on a rescission by a defrauded stockholder. Cf. also Flor v. Jandrew, 15 F.(2d) 765 (C. C. A. 5th); Davis v. Louisville Trust Co., 181 F. 10, 25, 30 L. R. A. (N. S.) 1011 (C. C. A. 6th); Newton National Bank v. Newbegin, 74 F. 135, 140, 33 L. R. A. 727 (C. C. A. 8th); In re William C. Jones Co. (D. C.) 289 F. 262.

It seems to me quite clear, therefore, that the petitioning creditors herein had claims provable in bankruptcy; that they had the right to institute and maintain an involuntary proceeding against the Bancunity Corporation; that there should be an adjudication in accordance with the recommendations of the special master; and that the creditors now need the aid which a receiver can give them under the Bankruptcy Act.

There is not in this case as yet any question of priorities as between creditors. If and when this question arises it will be found discussed by the Circuit Court of Appeals MacNamee v. Bankers' Union for Foreign Commerce & Finance, 25 F.(2d) 614, 617, 618.

Settle order on notice.