## In re STARK.

District Court, S. D. New York.

May 29, 1931.

Sylvester & Harris, of New York City (Charles L. Sylvester and Sidney Harris, both of New York City, of counsel), for the motion.

Martin Conboy, of New York City (Martin Conboy and David Asch, both of New York City, of counsel), for Charlotte A. Hopper, opposed.

WOOLSEY, District Judge.

This motion is in all respects denied.

I. On April 28, 1931, the bankrupt Stark was committed to and is now in the county jail, New York county, at 434 Thirty-Seventh street, New York City, under a body execution issued under section 826, subdivision 10, of the New York Civil Practice Act, on a judgment secured against him by default in the sum of $107,064.59, with interest from May 2, 1930.

On April 30, 1931, apparently, partly at least, in order to escape this durance, he filed a voluntary petition in bankruptcy in this court and on the same day was adjudicated a bankrupt.

He now seeks an order of release under section 9 of the Bankruptcy Act (11 USCA § 27) on the ground that the cause of action on which the judgment and consequent execution under which he is held in jail by the sheriff of New York County is dischargeable in bankruptcy.

II. The complaint in the Supreme Court of New York County under which the judgment was had on which the body execution, resulting in the bankrupt's present incarceration, was issued, alleges that in January, February, and March, 1929, the bankrupt, defendant herein, by false and fraudulent representations induced the plaintiff to lend him $100,000, for which she was given a memorandum reading as follows:

"Received this day from Mrs. Charlotte A. Hopper, Hartford, Conn. the amount of $100,000 (One hundred thousand dollars) which I promise to pay back on April 1st, 1931 with interest. New York, March 8th, 1929.           C. M. Stark"

The complaint further alleges that so soon as the plaintiff learned that the defendant's representations were false she rescinded the above loan agreement and brought suit for the money with which she had thus been fraudulently induced to part.

Allegations of fraud were obviously necessary in this situation to the maintenance of the plaintiff's cause of action for money had and received. Otherwise, when the action was commenced in April, 1929, it would have been clear on the face of the complaint that the period of credit, which by the receipt extended to April 1, 1931, had not expired.

In fact, therefore, although the plaintiff has brought a suit for money had and received, her action might have been defeated as premature, if the bankrupt had challenged the fraud by answer and successfully supported his challenge by proof. But the bankrupt did not do this. He let a default go against him and implicitly admitted the plaintiff's allegations.

III. The modern principle of the common money counts in indebitatus assumpsit was borrowed from equity by the common law, and, in most cases, they are merely convenient substitutes for a bill in equity when money alone is sought to be recovered, and the claim therefor is based on the fact that the defendant ex aequo et bono should return the money to the plaintiff.

For, as Chancellor Walworth happily expressed it in Hunt v. Amidon, 4 Hill (N. Y.) 345, 349, 40 Am. Dec. 283: "Courts of law, a long time since, fell in love with a part of the jurisdiction of the court of chancery, and substituted the equitable remedy of an action of assumpsit upon the common money counts, for the more dilatory and expensive proceeding by a bill in equity in certain cases."

Under the old practice the plaintiff in the state court would have filed a bill to rescind the contract of loan because of fraud, and, in his prayer for relief, would have asked incidental relief in the form of a return of the money so fraudulently secured. A situation somewhat analogous to the old practice is found in the Matter of Bullis, 68 App. Div. 508, 73 N. Y. S. 1047, affirmed not only in 171 N. Y. 689, 64 N. E. 1119, but also in the Supreme Court sub nomine Bullis v. O'Beirne, 195 U. S. 606, 25 S. Ct. 118, 49 L. Ed. 340.

The fact, however, that now we may bring an action at law for money had and received based on the fiction of a contract implied in law to repay the money, merely gives us a less technical form of remedy at law, and does not alter in any respect the underlying principle on which the remedy is based—in the case under discussion the fraud by which the bankrupt has been unjustly enriched.

This is shown by the fact that the measure of the recovery in such cases is not the damages of the plaintiff but the amount of the unjust enrichment to the defendant which he cannot in conscience keep. Cf. Bayne v. United States, 93 U. S. 642, 23 L. Ed. 997; United States v. State Nat. Bank, 96 U. S. 30, 24 L. Ed. 647; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N. E. 496, 9 Am. St. Rep. 698; Mason v. Prendergast, 120 N. Y. 536, 24 N. E. 806; Hindemarch v. Hoffman, 127 Pa. 284, 18 A. 14, 4 L. R. A. 368, 14 Am. St. Rep. 842; Keener on Quasi Contracts, pp. 183–187.

IV. Furthermore, the fact the bankrupt is now in jail on body execution under a state court judgment, and has by this motion indirectly to apply to a federal court to extricate him, is the best possible proof that, under the law of New York state—whatever may have been the obiter dicta of the judges who heard the motion to dismiss the complaint—the bankrupt is properly held in the sheriff's custody on a judgment involving fraud within the meaning of section 833, subdivision 10, of the New York Civil Practice Act. Otherwise he has a remedy in the state court by writ of habeas corpus.

V. The bankrupt's case, consequently, falls within the principle of the decisions cited by Mr. Conboy in behalf of the state court judgment creditor. Bullis v. O'Beirne, 195 U. S. 606, 620, 25 S. Ct. 118, 49 L. Ed. 340, affirming Matter of Bullis, 68 App. Div. 508, 517, 73 N. Y. S. 1047; 171 N. Y. 689, 64 N. E. 1119; In re Reinhoudt, 21 F. (2d) 590 (D. C. W. D. N. Y.); Bloemecke v. Applegate, 271 F. 595 (C. C. A. 3); In re Kalk, 270 F. 627 (D. C. N. D. N. Y.); Mackel v. Rochester, 135 F. 904, 908 (D. C. Mont.).

Judge Learned Hand's decision in Re Ennis & Stoppani (D. C.) 171 F. 755, does not stand in my way, for, as he points out, at 171 F. 757, in the case before him the suit was not brought in the state court, as here, on the theory of a rescission of a contract for fraud, but—in affirmance of the contract—"for conversion of a title obtained through the very fraud on which the victim now seeks to rely." The same answer is to be made in respect of the case of In re Nuttall (D. C.) 201 F. 577.

My own decision in Re Bancunity Corporation (D. C.) 36 F.(2d) 595, is not in any way inconsistent with my holding here, for there I held that defrauded stockholders could change their status to that of creditors by a decree of rescission in the bankruptcy proceeding, and that their claims for money paid to bankrupt would then be provable in bankruptcy. The question whether a claim is provable, however, does not determine whether it is dischargeable, for a defrauded creditor may get on account, what he can in the bankruptcy proceeding by dividends or payment on composition without having barred by the discharge of his debtor any deficiency balance due on his non-dischargeable cause of action for fraud. Cf. Friend v. Talcott, 228 U. S. 27, 33–36, 39, 40, 33 S. Ct. 505, 57 L. Ed. 718.

VI. I hold, therefore, that the judgment against the bankrupt under which he is now held in the New York county jail is not dischargeable in bankruptcy owing to the provisions of section 17a (2) of the Bankruptcy Act, 11 USCA § 35 (2), and that, consequently, the bankrupt has not any right to be released under section 9 thereof.

Settle order on two days' notice.