cordingly the court held the vessel liable for the full value of the cargo, even though lost in a hurricane which, under another provision of the bill of lading, would have exempted the carrier from liability had there been no deviation. Since, under our decision in the Sarnia Case, supra [2 Cir., 278 F. 459], a failure to carry as required by the terms of the bill of lading or a deviation of the voyage gives the shipper the right to consider the goods as converted by the deviator, and the ship responsible for damages due to breach of the contract of carriage, without any reference to the question of whether the deviation had any bearing on the particular loss complained of, the carrier here must be held for the full damages flowing from the breach." See, also, The Citta Di Messina, supra, 169 F. at page 475.

The petitioner places great weight on the cases of The Henry W. Cramp, D.C., 6 F.2d 900 and the Sidney Blumenthal & Co. v. United States, D.C., 21 F.2d 798. I am of the opinion that these cases are not controlling on the within question. Furthermore, these cases are not considered the weight of authority in the United States. See discussion of these cases in The Pelotas, 5 Cir., 66 F.2d 75, at page 77.

■ Accordingly, even though the proximate cause of the damage was the stranding, entirely independent of the deviation, the court must hold that Farr & Company is entitled to an interlocutory decree for damages to the sugar loaded prior to the loading at San Pedro de Macoris, with the usual reference to prove its damages.

■ There is no definite proof that the loss herein was occasioned or incurred with the privity or knowledge of the owner of the vessel, the Hain Steamship Company, Ltd. Therefore, petitioner's application for a limitation of liability is granted.

Because of my holding herein, I have not considered Farr & Company's charges and proof that, in addition to the deviation, the steamship Tregenna and her owners are also liable for the loss sustained because the stranding of the Tregenna was due to the negligence of the master and that the vessel was unseaworthy, both when sailing from Santiago, in that the vessel did not have on board proper and sufficient charts covering the port of San Pedro de Macoris, and when sailing from San Pedro de Macoris, in that she was without a compulsory pilot on board and hence was improperly manned, equipped and supplied and that the master was not competent to navigate in the harbor of San Pedro de Macoris without the aid of a licensed government pilot.

■ As to the second case, there is no serious question but that Farr & Company owe the shipowners for the freight for the voyage in question. I therefore direct that a decree be entered in favor of the Hain Steamship Company, Ltd., for the freight due and owing, but, inasmuch as the damages accruing to Farr & Company herein will far exceed the freight owed to the vessel, it is decreed that this sum shall be surrendered by the Hain Steamship Company, Ltd., as part of the limitation fund herein.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, then, submit, on notice, findings of fact and conclusions of law in accordance therewith.

### In re D. W. F., Inc.

District Court, S. D. New York.
May 10, 1940.

126

Wilzin & Halperin, of New York City (Michael Halperin, of New York City, of counsel), for alleged bankrupt.

David Greenberg, of New York City, for petitioning creditors.

CONGER, District Judge.

This is a petition to review an order of the Referee dismissing an amended involuntary petition in bankruptcy. The review relates to the findings made by the Referee with respect to an allegedly fraudulent transfer and two payments made by the bankrupt which are asserted to have been preferential. The original petition was filed on December 26, 1939, and the amended petition containing the specifications passed upon by the Referee was filed on January 30, 1940.

The alleged bankrupt has an exhibit in the entertainment section of the New York World's Fair. On July 10, 1939, when it had no surplus funds, it issued its check to Gardner Displays, Inc., for the sum of $3,000 which was paid under date of July 12th. Gardner Displays then paid over this sum to one Edward James, former president of the alleged bankrupt who thereupon transferred his stock in D. W. F., Inc., to the alleged bankrupt corporation. Entries were made in the books under date of September 30, 1939, indicating the true nature of the transaction. Petitioner argues, however, that the transaction was concealed until that date.

The Referee thought that the transfer was perfected on July 10, 1939, and four months having passed before the filing of the petition, it could not constitute an act of bankruptcy. I can see no reason to disturb his ruling. The date of the transfer controls, irrespective of when the creditors ascertain it. Congleton v. Roberts, 5 Cir., 61 F.2d 902; Jones v. Coates, 8 Cir., 196 F. 860.

On July 19, 1939, most of the creditors of the alleged bankrupt, including the petitioning creditors, entered into a stipulation whereby they agreed to accept payment of their respective debts "as and when distribution can be made from the earnings of said D. W. F. Inc." The consideration recited was that no salaries would be paid to the officers of the alleged bankrupt, and that the corporation would keep a working capital balance of $3,000. Admittedly, after the date of the stipulation, the alleged bankrupt paid certain sums to two creditors, one of whom was a party to the agreement, and these payments are asserted to have been preferential.

The Referee found, however, that these payments were for current obligations, which at the time of payment could have been reduced to judgment, and thus were not payments to creditors of the same class as the petitioning creditors. In addition, he found that there was no proof of the intent to prefer, necessarily connected with illegal preferences.

The petitioning creditors argue that the agreement of July 19th, should have been ordered rescinded by the Referee on the ground that part of the consideration was an understanding that one of the persons interested in the exhibit would invest $2,500 in the alleged bankrupt corporation,

which had not been done. The Referee rejected the argument on the grounds that petitioners had not pleaded their right to rescission, and he struck out the testimony with respect to the alleged failure of consideration, because it had not been connected with the issues set forth in the petition. I agree with the Referee. The technical requirements of a rescission were in no way met by the petitioners. See In re Bancunity Corporation, D.C., 36 F.2d 595. Thus the agreement stood and the creditors allegedly preferred cannot be considered as creditors of the same class as petitioners. In any event, the Referee has found that there was no intent to prefer and this finding should not be upset except for compelling reasons. Order 47 of the General Orders in Bankruptcy, 11 U.S.C.A. following section 53.

Motion to review is denied. Settle order on notice.

### SEHON–STEVENSON & CO. v. TOWNSHEND.

### BANKS–MILLER SUPPLY CO. v. SAME.

No. 2560.

District Court, S. D. West Virginia.

Sept. 10, 1940.

Okey P. Keadle, of Huntington, W. Va., for trustee.

F. M. Livezey, of Huntington, W. Va., for Sehon-Stevenson & Co.

Lewis A. Staker, of Huntington, W. Va., for Banks-Miller Supply Co.

HARRY E. WATKINS, District Judge.

This is the third appeal in the bankruptcy proceeding of R. R. Smith. Twice before, the Smith case has been before this court and the Fourth Circuit Court of Appeals. See In re Smith, 23 F.Supp. 174; Union Trust Co. of Maryland v. Townshend, 101 F.2d 903; Sehon-Stevenson & Co. v. Union Trust Co. of Maryland et al., 113 F.2d 968, decided August 30, 1940. No additional evidence has been taken in this case. The facts are stated in detail in these opinions, and will not be repeated here, except so far as they relate to the instant controversy.

In 1931 bankrupt was the owner of an undivided one-third of certain oil and gas interests, and the Houston Coal Company the owner of two-thirds thereof. For some time prior to November 30, 1931, the date of filing of the bankruptcy petition, the owners were negotiating with the Columbia Gas and Electric Company, and the United Fuel Gas Company, its subsidiary, for the sale of their oil and gas interests. By letter dated July 30, 1931, addressed to the Columbia Gas & Electric Company, bankrupt and the Houston interests submitted an offer to the gas company for the